JOSEPH PILIERO, Respondent, *v.* ALLSTATE INSURANCE COMPANY, Appellant.

Second Department, December 27, 1960.

*Marshall D. Sweetbaum* and *John W. McClancy, Jr.,* for appellant.

*Frank M. Nicolosi* and *Maurice J. Giaimo* for respondent.

KLEINFELD, J. This is an action for a judgment declaring that plaintiff is entitled to the coverage of an automobile liability insurance policy issued by defendant Allstate Insurance Company to one Carl Tamorria.

The action was submitted to the court on the following agreed facts:

In Queens County, there is a restaurant known as Tufaro's Restaurant. Adjoining it is a parking lot which holds 30 cars. This lot is used exclusively for the patrons of the restaurant and for the patrons of a bakery, known as Tufaro's Bakery, which is located in the restaurant building. The lot, the restaurant and the building in which the restaurant is located, are all owned by "affiliated corporations." The owners of the restaurant and lot do not charge patrons for parking; the said owners do not permit the general public to park in the lot; and the said

owners have no license for a parking lot. A sign posted at the lot reads: "Parking for Tufaro's Patrons. Not Responsible for Damage on Cars."

Plaintiff Joseph Piliero is employed as a printer during the day. A few evenings a week, however, in order to earn some extra money, he "worked" at this parking lot as a voluntary, unofficial parking lot attendant, with the knowledge and consent of the restaurant and lot owners. He "worked" at the lot whenever he wished; he had no regular days or times when he was required to be there; he was not supervised or controlled by the restaurant or lot owners; and he received no compensation of any kind from them. It was his practice to station himself at the lot and to offer his services to the patrons by parking their cars as they arrived and by delivering their cars as they were leaving. His remuneration consisted solely of tips given to him by the patrons.

On June 22, 1955, one Carl Tamorria had an automobile liability insurance policy issued by defendant. On that date, he went to Tufaro's Restaurant in his car. When he got there, he drove onto the parking lot. Plaintiff, who was there at the time, signaled Tamorria to stop at the entrance to the lot. Tamorria did so, and turned the car over to plaintiff, who parked it in the lot.

After dining in Tufaro's Restaurant, Tamorria returned to the parking lot and asked plaintiff to get his car. Plaintiff complied with the request; he got the car and delivered it to Tamorria at a place near the exit from the lot.

The car was then involved in an accident. There is a dispute as to how the accident occurred, but that question is not material to the issues in this case.

Thereafter, Max Kivel and his two children (Larry and Barbara) who were injured in the accident, brought an action in the City Court, Queens County, against Joseph Piliero, the plaintiff in this case. Piliero sent the summons and complaint to defendant and asked it to defend him. It refused, contending that Piliero is excluded from coverage under the policy issued to Tamorria.

Piliero then instituted this action for a declaratory judgment that he is within the coverage of said policy. The trial court held for plaintiff, and granted judgment declaring, *inter alia*, that plaintiff is covered by the policy, that defendant is required to defend him in the pending action against him, and that it is required to pay any sum for which he may be adjudged to be liable in said pending action. Defendant appeals.

It is not disputed that plaintiff operated Tamorria's car with the latter's permission, and consequently was an "additional insured" under the policy. The issue is whether he comes within the policy's exclusion clauses, the relevant parts of which read as follows:

3 (b): "This policy does not apply * * * to afford insurance to any person or organization * * * *employed in or operating an automobile business*, with respect to an accident arising out of its operation" (emphasis supplied).

X (10) Definitions: "'Automobile business' means an automobile repair shop, public garage, sales agency, service station or *public parking place*" (emphasis supplied).

Plaintiff contends that the Tufaro's Restaurant parking lot is not an "automobile business" within the quoted clauses; defendant contends that it is. We believe plaintiff is right.

When the relevant policy clauses are read together and their phrases considered in context, it seems clear to us that "public parking place" is intended to mean a commercial parking lot — one that is in the business of storing cars for a fee. The exclusion clause expressly applies only to "an automobile business." The types of activities listed in the clause defining "automobile business" are plainly commercial enterprises devoted entirely to selling or servicing cars for a fee.

In construing the words "public parking place," as used in this definition clause, we may properly apply the maxim "*noscitur a sociis*"—"it is known from its associates" (see McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 239). The "associates" of the phrase "public parking place" are "automobile repair shop", "sales agency", "service station", "public garage"—all obviously "automobile businesses" as the layman understands those words. Clearly, they are different from a private lot owned by a restaurant operator (or its affiliate) and used by the restaurant as a place where its customers may park their cars free of charge. The operation of such lot is not an "automobile business" but rather an incidental convenience furnished by the restaurant owner to his patrons. In other words, it is not an "automobile business" but merely part of the restaurant business. That being so, it is not a "public parking place" as that phrase is used in the policy, and consequently is not an "automobile business" within the ambit of the policy exclusion clause.

Even if we were to assume *arguendo* that the meaning of "public parking place", as that phrase is used in the policy, is doubtful and uncertain, we would still have to construe it in

plaintiff's favor, since in such cases ambiguities must be resolved against the insurance company.

Another reason for this conclusion is the fact that the company has the burden of establishing '' that the words and expressions used not only are susceptible of [its] construction but that it is the only construction that can fairly be placed thereon '' (*Hartol Prods. Corp.* v. *Prudential Ins. Co.*, 290 N. Y. 44, 49). Clearly, defendant has not sustained such burden.

There is a further reason why plaintiff should prevail. On the agreed facts in this record, he was not '' employed in or operating an automobile business ''. Obviously, he was not '' operating '' the lot; he was merely a volunteer who offered to park cars in the lot for a tip. He was not '' employed '' by the owner of the lot; he got no salary, was not supervised, and came or went as he pleased. He was an independent '' entrepreneur '' who dealt directly with the car owners and performed directly for them a menial service with the hope of a gratuity for his pains. Hence, even if it were assumed *arguendo* that the lot was a '' public parking place '' within the policy exclusion clause, plaintiff would not come within that clause because he was neither the operator of, nor employed in, the parking lot.

Defendant relies heavily on *Best & Co.* v. *Incorporated Vil. of Garden City* (247 App. Div. 893, affd. 273 N. Y. 564). That case, though, is readily distinguishable. It dealt with the construction of the phrase '' public parking place,'' as the phrase was used in a zoning ordinance requiring permits for such places. At issue there was the municipality's right to regulate activities affected by a public interest. And it was solely because a store's parking lot touches the public interest in the same way as commercial lots (i.e., by creating fire and traffic hazards), that the court there held that such lot came within the scope of the regulatory ordinance.

Far different is the case at bar where the words '' public parking place '' must be construed in the context of a liability insurance policy clause excluding from its coverage an operator or employee of an '' automobile business.'' Here, the public interest in regulating hazardous uses of property is not involved. If there be any public interest at all, it would be to preserve the insurance protection for those injured in an automobile accident; and that interest would require strict construction of an exclusion clause so as to limit its exclusionary scope.

We conclude that plaintiff does not come within the exclusion clause of the policy at bar; that he is covered by the policy; and

that he is entitled to all the protection and all the benefits which it affords.

The judgment appealed from should be affirmed, with costs.

NOLAN, P. J., UGHETTA, PETTE and BRENNAN, JJ., concur.

Judgment affirmed, with costs.