GREAT CENTRAL INSURANCE COMPANY, Plaintiff-Appellee, *v.* EDWARD J. HARRIS *et al.*, Defendants-Appellees.—(FARMERS INSURANCE GROUP, Defendant and Counterplaintiff-Appellant.)

Third District   No. 76-54

Opinion filed February 28, 1977.—Rehearing denied April 13, 1977.

Daniel K. Russell, of Princeton, for appellant.

Louis E. Olivero, of Peru, for appellees Edward J. Harris *et al.*

T. Donald Henson, of Herbolsheimer, Lannon and Henson, P. C., of La Salle, for appellee Great Central Insurance Company.

Mr. JUSTICE STENGEL delivered the opinion of the court:
This appeal is from an order in a declaratory judgment action

determining that, as to damages arising out of a collision involving a garage customer's car driven by a garage employee, insurance coverage must be provided by the car owner's insurer and not by the garage liability insurer.

According to the record, at about 7:10 p.m. on February 28, 1973, Daniel Tipton drove his recently acquired 1966 Chevrolet Impala into the Owens Oil Service Station, owned and operated by Edward J. Harris, in La Salle, Illinois. Tipton testified that after purchasing gasoline for his car from an attendant, he walked away from his car to talk to two friends by the pump. A few minutes later he turned around and saw Phil Croissant, who was a mechanic at the station, getting into the driver's seat of his car. Tipton said he ran over to stop Croissant, but the car doors were locked, and Croissant drove off. A few minutes later, Tipton watched Croissant approaching the station and saw the car suddenly speed up and collide with the rear end of ·a car stopped for a red light. The latter car then struck another automobile stopped in front of it. The occupants of both stopped vehicles were injured, and subsequently filed a personal injury action against Tipton, Croissant and Harris.

Croissant was a full-time salaried employee of Harris and worked as a mechanic and as the operator of a wrecker service. He had previously worked on Tipton's car, and about one week earlier had been called to the scene of an accident where Tipton's old car had been demolished. Croissant gave a different version of the events preceding this accident. He said that Tipton came into the station office while Mike Kohr, another station employee, put gas in Tipton's car. Croissant asked Tipton how his new car was running, and Tipton replied that something was wrong with it but he didn't know what. Croissant offered to drive it to see what was wrong, and Tipton said he didn't know if he should. While Tipton was paying Kohr for the gas in the back room, Croissant went out on the drive and got in the car. Tipton came over and said that his father wouldn't like for anyone else to drive the car. Croissant then drove off to test the car by driving around the block. As he was returning to the station the carburetor would not release, and he was unable to avoid hitting the car stopped in front of him.

Harris testified that Croissant had gone off duty at 6 p.m. on Feb. 28 and was not employed at the time of the accident. This testimony was contradicted by other witnesses and was not supported by the payroll records. Harris also stated that Croissant had authority to test drive a car only after he had worked on it and only with Harris's express consent and express permission of the owner. Croissant testified that he regularly test drove customer's cars, usually with the customer along or with their permission, and he believed he had Tipton's permission on the day in question. On rebuttal, Harris again testified that Croissant knew he had to

have permission of the owner and of Harris before he could test drive a car, but Harris also admitted that Croissant could make diagnostic test drives and that he could do so when Harris was not present.

After the injured persons filed a personal injury suit, Tipton's insurer, Farmer's Insurance Group, undertook the defense of both Tipton and Croissant with a reservation of rights as to Croissant. Great Central Insurance Company, which had issued a garage liability policy to Harris, brought this declaratory judgment action to determine coverage, joining as defendants the injured parties, Harris, Croissant, Tipton, and Farmers.

At the conclusion of the bench trial, the trial court found that at the time of the accident, Croissant was test driving the Tipton auto as a permissive user of Daniel Tipton, that Croissant was not test driving within the scope of his employment, that the automobile business exclusion in the policy issued by Farmers had no application, that Farmers must afford Croissant insurance coverage, and that Harris was not liable as a matter of law and fact. The court then ordered that neither Great Central nor Harris had any obligation to defend Croissant · in any action brought by the injured occupants of the rear-ended vehicles, but that Farmers was so obligated. Farmers has appealed, asserting numerous grounds for a reversal.

Farmers first contends that the finding that Croissant was a permissive user was against the manifest weight of the evidence. In its memorandum opinion, the trial court stated that Croissant's version of the circumstances leading up to the accident was more credible than Tipton's account, and that the evidence established that Croissant was a permissive user within the terms of the Tipton policy.

■■■ Since the evidence clearly does not establish actual permission from Tipton to Croissant, the question is whether permission can be implied from the surrounding circumstances. The test for determining implied permission was well stated in *Orrill v. Garrett* (4th Dist. 1968), 100 Ill. ·App. 2d 194, 198, 241 N.E.2d 1, 3, as follows:

> "Implied permission involves an inference or circumstances arising from a course of conduct or relationship between the parties in which there is a mutual acquiescence or lack of objection under circumstances signifying permission. An implied permission is not, therefore, confined alone to affirmative action."

In the case at bar, the sole relationship between the parties was that of a mechanic and customer, and from that fact a legitimate inference can be drawn that Croissant believed he had Tipton's permission to test drive the car. Accepting as we must, the trial court's determination as to the credibility of the witnesses who gave conflicting versions of the conversation between Tipton and Croissant, we cannot say that this finding was contrary to the manifest weight of the evidence.

Once a permissive use is established, the policy issued by Farmers

provides coverage under the standard omnibus clause which insures persons using the Tipton vehicle with the insured's permission.

Farmers argues, however, that liability in this case is barred by the following exclusion for coverage:

"This policy does not apply * * *

* * *

(4) while the described automobile is being used in the automobile business, but this exclusion does not apply to the named insured, a resident of the same household as the named insured, a partnership in which the named insured or such resident is a partner, or any partner, agent or employee of the named insured, such resident or partnership."

The term "automobile business" is defined in the policy as "the business of selling, repairing, servicing, storing or parking automobiles, their parts or equipment." Farmers contends that a finding of permissive use for a test drive by a mechanic must necessarily result in application of the automobile business exclusion, and that the trial court erred in holding the exclusion inapplicable. We do not agree.

The automobile business exclusion has been extensively litigated in cases arising under a variety of circumstances. As a general rule, the insurer has the burden of showing affirmatively that an exclusion is applicable (*Kravis v. Smith-Marine, Inc.* (1st Dist. 1974), 20 Ill. App. 3d 483, 314 N.E.2d 577; *Deterding v. State Farm Mutual Automobile Insurance Co.* (5th Dist. 1966), 78 Ill. App. 2d 29, 222 N.E.2d 523), and any ambiguities are to be resolved in favor of coverage (*Grahame v. Mitchell* (5th Dist. 1975), 28 Ill. App. 3d 334, 329 N.E.2d 17; *Helmich v. Northwestern Mutual Insurance Co.* (7th Cir. 1967), 376 F.2d 420).

The exclusion provision of the car owner's policy in *Universal Underwriters Insurance Co. v. Farmers Insurance Exchange* (1st Dist. 1974), 17 Ill. App. 3d 386, 308 N.E.2d 288, was identical to the one quoted above. In *Universal*, the owner left his car with a garage for repair of the door lock and emergency brake handle. After completing the authorized repairs, the mechanic test drove the car to see if any other repairs were needed, and during the drive, he was involved in an accident. Diagnostic test drives were a regular business practice of the garage, but customers had no knowledge of the policy. In a declaratory judgment action, the reviewing court held that the automobile was being used in the automobile business at the time of the accident and that the automobile business exclusion was applicable.

In a recent case involving an accident which occurred while a new car was being transported from California to its purchaser in Maryland, the Appellate Court for the Fifth District discussed *Universal* and other cases, and expressed the view that the automobile business use exclusion ought

to be limited to the use of vehicles as an integral part of a business. (*Grahame v. Mitchell* (5th Dist. 1975), 28 Ill. App. 3d 334, 329 N.E.2d 17.) The court said:

> "There is a type of insurance, commonly referred to as 'garage liability insurance,' that covers the risks present in the business of selling, repairing and servicing cars, the type of activities commonly thought of as comprising the automobile business. It has been suggested, and we think with force, that the proper interpretation to be given the language of this exclusion in a family automobile policy is to exclude coverage of persons engaged in these businesses and the use of motor vehicles, whether tow-trucks, demonstrator cars or service vehicles, employed as an integral part of these businesses; that the coverage afforded by garage liability insurance and family automobile liability insurance is mutually exclusive." (28 Ill. App. 3d 334, 337, 329 N.E.2d 17, 19.)

The court went on to hold that the business of transporting vehicles cross-country was not within the definition of automobile business as defined by the car owner's family automobile policy, and thus that the exclusion would not apply in that case.

This court has also had occasion to consider a similar exclusion in *State Farm Mutual Auto Insurance Co. v. Mohan* (3d Dist. 1967), 85 Ill. App. 2d 10, 228 N.E.2d 283, where the automobile business exclusion contained in the car owner's policy was held inapplicable when a garage employee wrecked a customer's car while he was engaged in a "personal lark" of his own. The owner had turned the automobile over to an Ottawa garage for servicing and removal of a dent. At the request of the garage, the owner of a body shop located in Newark, Illinois, picked up the car to take it to Newark. Instead of returning to Newark, the driver undertook a tour of Ottawa night spots with a girlfriend, in the course of which an accident occurred. After an extensive discussion of coverage applicable for successive permissive users, the court found that insurance policies of both the owner and driver afforded coverage and that the automobile business exclusion did not apply because the driver was on a personal lark of his own and was not using the car in the automobile business.

■■ Here the implied permission given to Croissant was for the limited purpose of finding out what, if anything, was wrong with Tipton's car. No mention was made as to who would do any needed repairs. Clearly, no bailment relationship was involved such as would arise when a vehicle is left at a garage for servicing or repairs. Once a bailment for hire is created, the garage operator as bailee is liable to the car owner for damages caused by his employees (*Evans v. Williams* (1st Dist. 1924), 232 Ill. App. 439; *Universal Underwriters Insurance Co. v. Northwestern National Insurance Co.* (S. D. Ill. 1969), 306 F. Supp. 437)), and the bailor

who does not retain control of the vehicle is not responsible to third persons for negligent use of the car by the bailee (*City of Rockford v. Nolan* (1925), 316 Ill. 60, 146 N.E. 564; *Mansfield v. Shapiro* (1st Dist. 1924), 234 Ill. App. 596; 4 Ill. L. & Prac. *Automobiles* § 201 (1971); 8 Am. Jur. 2d *Automobiles & Highway Traffic* § 578 (1963); Annot., 35 A.L.R.2d 804 (1954)).

■■ We believe the automobile business exclusion in Tipton's policy precludes coverage only where the owner has given control of his car to a garage as bailee. It is the absence of a bailment contract which distinguishes the case at bar from *Universal Underwriters Insurance Co. v. Farmers Insurance Exchange* (1st Dist. 1974), 17 Ill. App. 3d 386, 308 N.E.2d 288, where the automobile had been left with the garage for repairs; here Croissant was a permissive user but neither he nor Harris was a bailee for hire.

One of the issues argued extensively before this court is whether Croissant was acting within the scope of his employment at the time of the accident. Since we hold that the test of liability is whether a bailment existed, any question as to the scope of Croissant's employment is irrelevant to the disposition of this case.

Accordingly, the trial court correctly held that Farmers must provide coverage to Croissant and that the automobile business exclusion is not applicable. Harris is not liable as a bailee of Tipton's vehicle; Great Central, therefore, has no liability as the insurer of Harris's garage operations. The judgment of the Circuit Court of La Salle County is affirmed.

Affirmed.

ALLOY, P. J., and SCOTT, J., concur.