Norman BUNTIN, Plaintiff,

v.

CONTINENTAL INSURANCE COMPANY, Defendant.

Civ. No. 77/99.

District Court of Virgin Islands, Division of St. Croix.

Sept. 27, 1977.

Thomas Alkon, Isherwood, Colianni, Alkon & Barnard, Robert A. Ellison, Christiansted, St. Croix, V.I., for plaintiff, Norman Buntin.

David V. O'Brien, Merwin, Alexander & O'Brien, R. Eric Moore, Christiansted, St. Croix, V.I., for defendant, Continental Ins. Co.

## MEMORANDUM OPINION

**WARREN H. YOUNG, District Judge.**

This case is before the Court on a motion for summary judgment by the plaintiff and a cross-motion for summary judgment by the defendant. The parties are in agreement as to the factual background of this case and therefore this matter is ripe for summary judgment since the only issues left to be resolved are legal in nature. Several questions have been raised by both parties but this Court is concerned only with the issue of liability at this time.

## I

## FACTUAL BACKGROUND

Although neither party disputes the facts involved in this matter, I shall review the developments leading up to these motions for the sake of clarity. On July 4, 1975, Preferred Rentals, Inc. rented a car to Marion Edwards, which was insured by a policy issued by the defendant, Continental Insurance Co. ("Continental"). On July 6, Edwards met Norman Buntin and another friend, Clement Richardson, in a Christiansted bar. The three decided to go to Frederiksted and because Edwards was unfamiliar with driving on the left hand side of the road, he requested Buntin to drive the car which he had rented. This request proved to be fatal as Buntin negligently collided into an oncoming car while traveling to Frederiksted, killing Edwards and seriously injuring Richardson.

In April, 1976, an action for wrongful death was filed by the Estate of Marion Edwards and an action for personal injuries was filed by Richardson. Buntin was the named defendant in both suits and he promptly notified Continental of the two actions since it was the insurer of the rental car. Continental disclaimed coverage and declined to defend Buntin. Both causes were consolidated and, after a trial, judgment was entered on November 16, 1976 in favor of both plaintiffs. The Estate of Marion Edwards recovered $165,000 plus interest and attorney's fees while Richardson received an award of $26,500 plus interest and attorney's fees.

After judgment, there were attempts at settlement, all of which were transmitted to Continental. However, Continental continued to disclaim any liability on its part and finally Buntin brought this action against Continental basically alleging that Continental breached its obligations under the terms of its insurance policy. Buntin alleges *inter alia* that Continental is liable to him for all damages and expenses incurred by him as the result of Continental's failure to defend the initial suit against him and for Continental's refusal to pay the judgments awarded to Edwards and Richardson.

Continental has responded and denied that the terms of the policy cover the rental car while Buntin was driving.

## II

### THE INSURANCE CONTRACT

Continental and Preferred Rental, Inc. ("Preferred") entered into an agreement whereby Continental agreed to insure all of the cars owned by Preferred. The terms of the agreement were reduced to writing in several separate documents. The first document was the basic policy which is the standard one used by Continental. It is somewhat general so that it can be used to cover many different situations. Next there were several documents commonly referred to as "endorsements".

Endorsements are significantly different from the basic policy in that endorsements are normally used by insurance companies to either expand or contract the general language of the basic policy, to tailor the policy to fit the particular needs of the insured. To put it another way, the basic policy sets up a general framework that covers the primary requirements of most insurance contracts while endorsements usually set forth the details needed in a given situation.

■ Before analyzing the insurance contract in question, it might be helpful first to look at what the minimum insurance coverage required by law is in the Virgin Islands with respect to rental cars. Under Title 20 of the Virgin Islands Code a rental agency must procure liability insurance on its rental cars so as to cover all damage caused by the "driver" of such a car. 20 V.I.C. § 418(a). This section then goes on to define a driver as

> any person . . . using or operating the drive-yourself car with the permission, express or implied, of such [rental agency].

Thus, rental agencies are required by law to procure liability insurance so as to cover any individual who drives the car with the express or implied permission of the rental company.

With this background in mind, I now turn to the policy *sub judice*. It states in Section III(a) that coverage extends to:

> the named insured . . . and also includes any person while using the automobile . . . provided the actual use of the automobile is by the named insured or such spouse or with the permission of either.

It is the plaintiff's contention that this section is applicable in this case. If there were no other provisions defining coverage, I would have very few problems with the plaintiff's argument. However, Endorsement Number Two ("endorsement") also has a section defining the term "insured" under the policy.[1] This section states in part:

> Subject otherwise to the provisions of the Definition of Insured agreement of the policy (a) the insurance with respect to any driverless car applies only to the named insured and rentee and, while used for business purposes of the rentee, and employer or employee of the rentee. . .

Driverless car is further defined in the endorsement to mean a rental car. Defendant Continental argues that the terms of the endorsement should control over the terms of the policy in deciding this case.

At this point the task before the Court is clearly twofold. First, I must decide whether the terms of the policy or those of the endorsement should control in defining the term "insured" under the insurance agreement. Second, after I have decided which provision is controlling, I must analyze the language of that provision to determine whether Buntin was an "insured" driver under the policy.

---

1. The plaintiff has argued in his rebuttal brief that the endorsement should not be considered by the Court since there is no evidence showing that the endorsement has been approved by the Commissioner of Insurance. I find no merit in this argument especially since it was the plaintiff who first introduced the endorsement as Exhibit A attached to his motion for summary judgment.

## III

### THE CONTROLLING PROVISION

It is stated in section 4:36 of *Couch on Insurance*, 2d:

A typewritten endorsement on an automobile liability policy must be given effect to the exclusion of any conflicting printed provision in the policy. (*citing Lumbermens M. Cas. Co. v. Sutch*, 197 F.2d 79 (3rd Cir. 1952)).

And in section 45:296 of *Couch on Insurance*, 2d it is stated that there is no rule of law, absent a specific statute, which prohibits the modification by an endorsement of the omnibus clause of the basic policy.

■ Obviously such a rule is subject to several qualifications. First, a policy and an endorsement should be construed if possible, so as to give effect to all provisions. *See Aetna Ins. Co. v. Getchell Steel Treating Co.*, 395 F.2d 12 (8th Cir. 1968). Second, provisions within the basic policy are not modified except to the extent that the provisions of the endorsement are intended to be substituted for those within the basic policy. Third, an endorsement which is limited so as to apply to only certain provisions within the basic policy has no effect on the remaining parts of the policy. *See generally* 44 C.J.S. *Insurance* § 300.

■ These qualifications are general rules of law but they are not the only limitations on the effect of endorsements to insurance policies. However, there appears to be no dispute among the authorities concerning which instrument should control if there is a direct conflict between the policy provisions and the terms of the endorsement. All courts which have addressed the issue have basically reached the same conclusion which is succinctly stated by the Tenth Circuit:

It is the general rule that an endorsement or rider attached to an insurance policy becomes and forms a part of the contract; that the policy and endorsement or rider shall be construed together; and that where *the provisions in the body of the policy and those in the endorsement or rider are in irreconcilable conflict, the provisions contained in the endorsement or rider will prevail over those contained in the body of the policy. Farmers Insurance Exchange v. Ledesma*, 214 F.2d 495, 498 (1954) (emphasis added).

This view has been adopted by the Third Circuit. *Lumbermens Mut. Cas. Co. v. Sutch*, 197 F.2d 79 (1952); *Globe Indem. Co. v. Liberty Mut. Ins. Co.*, 3 Cir., 138 F.2d 180 (1943). In light of the overwhelming number of cases which have reached the same conclusion, it is unnecessary to cite more. *See generally* 44 C.J.S. *Insurance* § 300. Thus, I find that the definition "insured" under Continental's policy must be controlled by the terms of endorsement to the extent that it may be in conflict with the provisions of the basic policy.

■ Before interpreting the language of the endorsement to determine whether Buntin qualified as an insured driver, I address one further argument of the plaintiff—that the ambiguity of the term "insured" appearing in the basic policy and in the endorsement should be resolved in favor of the insured. While all ambiguities should normally be construed against the party who drafted the policy agreement, I find no ambiguity for the reason that I find the endorsement to control over the basic policy. The basic policy specifically states that it can be changed or modified by a properly executed endorsement. Therefore, once an endorsement has been properly added to the policy, it shall control where it is in conflict with the basic policy.

## IV

### INTERPRETATION OF THE ENDORSEMENT

■ In analyzing the language of the endorsement, I must deal with two clauses to determine whether Buntin qualifies as an "insured" driver. The first clause involves the clause "subject otherwise to the provisions of the Definition of Insured agreement . . . ." Then it proceeds to limit the insurance coverage to certain specified drivers of driverless cars. Does that lan-

guage of the endorsement supersede the general definition of "insured" in the basic policy? I conclude that the use of the adverb "otherwise" means simply that the endorsement applies subject to the terms of the basic policy in all points or respects other than the application of the policy to driverless cars. The endorsement does not say "subject to the provisions of the policy;" instead, it clearly states that, subject *otherwise* to the provisions of the policy, the insurance with respect to a driverless car (*rental car*) applies only to specific individuals. Thus, any determinations of the coverage of the policy to a driver of a rental car is governed by the terms of the endorsement.

■ The second clause I must deal with involves the specific individuals covered by the policy, which states in part that coverage extends "only to the named insured and rentee and, while used for business purposes of the rentee, and [*sic*] employer or employee of the rentee." The "named insured" is Preferred Rental, Inc. so that term does not apply. Furthermore, there can be little doubt that Buntin was not an employer or employee using the car for the business purposes of Edwards. The only term left which must be interpreted is the word "rentee" and this clearly applies only to Marion Edwards.

In light of the foregoing analysis it is clear that the endorsement is valid and controlling and that it does limit the coverage of the policy, in this case, to the named rentee, Edwards.

V

PLAINTIFF'S "USE" THEORY
OF RECOVERY

■ Plaintiff has urged the Court to find that Buntin was an insured driver since he was driving the car with the permission of and for *the use* of the rentee, Edwards. The plaintiff cites many cases which hold that where a policy states that a person is covered while using the car he need not necessarily be operating the car. Instead, so long as the car is being used with the insured's permission and for his benefit, the person driving the car is an insured driver. While this legal theory is widely accepted, it is not applicable to the policy in question since the endorsement does not include the phrase "for the use of the rentee". Thus, the plaintiff's argument is without merit.

In rejecting the plaintiff's argument I must also note that the "use" theory is contrary to the obvious intent of the parties in this case. Preferred needed only to provide insurance for those individuals who had its consent to drive and therefore there was no point in obtaining insurance which would cover all potential drivers while the car was being "used" for the rentee. Since Preferred would not be liable for any damage done by a third party who did not have the company's consent to drive, the company had no need for the extra coverage at an expense to them. Obviously Continental intended to only cover Preferred's needs by Endorsement No. Two.

While it may be preferable to have all persons driving a rental car with the permission of the rentee covered by the insurance policy, this is not required by law in the Virgin Islands. The legislature has not seen fit to require a rental company to obtain insurance that covers all drivers who have the rentee's permission to drive; instead, a rental company need only provide coverage for the rentee and anyone else to whom the rental company gives permission to drive. Although the wisdom of the legislature may be questioned, any change must come from that body as I can only interpret the law as it presently exists. Of course, there may be situations where a Court could impute the consent of a rental company to a third person who has no express consent, such as in an emergency situation where the rentee is physically unable to drive and a third party is needed to drive the car. However, no such exigent circum-

stances exist here and therefore I need not address the issue of implied consent.

## VI

## CONCLUSION

In summary, I find that there is no factual dispute in this matter and thus it is ripe for summary judgment. Due to the wording of the endorsement and to the clear line of cases which hold that the terms of an endorsement control over the policy provisions where the two conflict, I am compelled to grant the defendant's cross-motion for summary judgment and to deny the plaintiff's motion for summary judgment.