492 F.Supp. 283 (1980)
TRANSAMERICA INSURANCE GROUP, a Foreign Corporation, Plaintiff,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a Foreign Corporation, Defendant.
Civ. No. LV 79-180 RDF.
United States District Court, D. Nevada.
June 11, 1980.
*284 Cromer, Barker, Michaelson, Gillock & Rawlings, Las Vegas, Nev., for plaintiff.
Rose, Edwards, Hunt & Pearson, Ltd., Las Vegas, Nev., for defendant.

ORDER
ROGER D. FOLEY, District Judge.
This controversy arises over the validity and interpretation of a so-called "automobile business exclusion" to the omnibus coverage of a policy of insurance issued to Mrs. Serena Chernik by the defendant State Farm Mutual Automobile Insurance Company (State Farm). Transamerica Insurance Group (Transamerica) instituted this lawsuit for declaratory relief, authorized by Chapter 30 of the Nevada Revised Statutes, in the Eighth Judicial District Court of the State of Nevada. State Farm removed the action to this Court pursuant to Title 28, U.S.C., § 1441 et seq. The matter is presently before the Court on cross motions for summary judgment. Each party has requested oral argument with respect to its own motion only; thus, no hearing would be mandatory under the holding of Dredge Corp. v. Penny, 338 F.2d 456, 461-62 (9th Cir. 1964). There is no dispute as to the relevant facts; the entire controversy concerns the application of the contractual language to those facts. Therefore, disposition of the matter by means of summary judgment is appropriate.

THE FACTS
On March 19, 1976, Serena Chernik drove her car to the Golden Gate Hotel & Casino (Golden Gate) and availed herself of the hotel's valet parking service. At the end of her visit, she requested that her car be returned from the parking lot. Charles Mason, employed by Golden Gate as a "parking lot attendant," brought the vehicle from the lot for Mrs. Chernik. He apparently failed to set the brake. As Mrs. Chernik attempted to get into the car, it began to roll, allegedly causing Mrs. Chernik to fall and sustain personal injuries. At the time of this incident, Golden Gate was protected against public liability by a policy of insurance written by Transamerica, and Mrs. Chernik's automobile was insured under an owner's policy written by State Farm. It is the construction of that State Farm policy which is the subject of this suit.
On August 5, 1976, Mrs. Chernik filed a tort action against Golden Gate claiming damages for the injuries allegedly suffered as a result of the incident involving the valet parking service. Transamerica undertook the defense of that action in accordance with the terms of its policy issued to Golden Gate. Transamerica tendered the defense to State Farm, contending that the hotel was an "insured" under the policy issued to Mrs. Chernik. State Farm refused and Transamerica instituted this action for declaratory relief as to the relative rights and obligations of the parties.
*285 The Golden Gate operates a parking lot as a convenience to its patrons. The parking lot is open to the general public, however, for a fee. The hotel validates parking tickets for its patrons  doing so readily for periods of one hour or less and, under some circumstances, doing so for longer periods of time. Under the hotel's method of accounting, the parking lot does not make a profit and indeed, at least at the time of the incident leading to this case, expenses were more than double the income received from parking fees.
By the terms and conditions of the automobile insurance policy issued to Mrs. Chernik, State Farm has obligated itself:
"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
"(A) bodily injury sustained by other persons, and
"(B) property damage,
caused by accident arising out of the ownership, maintenance or use, including loading or unloading, of the owned motor vehicle; and to defend, with attorneys selected by and compensated by the company, any suit against the insured alleging such bodily injury or property damage and seeking damages which are payable hereunder even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient." (Emphasis added.)
The term "insured" is defined in the policy, in relevant part, as including:
"(4) any other person while using the owned motor vehicle, provided the operation and the actual use of such vehicle are with the permission of the named insured or such spouse and are within the scope of such permission, and
"(5) under coverages A and B any other person or organization, but only with respect to his or its liability for the use of such owned motor vehicle by an insured as defined in the four subsections above."
There is no dispute as to the fact that Mr. Mason comes within the language of subparagraph (4) and that by virtue of that fact the Golden Gate comes within subparagraph (5).
The cause of this action is the policy's "automobile business exclusion" which provides that:
"This insurance does not apply under:
(e) Coverages A and B, to the owned motor vehicle while used by any person while such person is employed or otherwise engaged in an automobile business of the insured or of any other person or organization, ..."
As used in the foregoing policy provision, "automobile business is defined to mean:
"the business or occupation of selling, leasing, repairing, servicing, transporting, storing or parking of land motor vehicles or trailers."
It is clear that the exclusion, if applicable to Mr. Mason as the driver of the automobile, would also preclude coverage of the Golden Gate, whose coverage under the policy is entirely dependent upon the employment relationship between Mr. Mason and the hotel.
The plaintiff strenuously contends that the exclusionary clause is ambiguous and therefore must be construed strictly against the insurer in favor of the insured. The principle of strict construction of insurance contracts is well established in the law of Nevada. See, e. g., Clark v. Truck Insurance Exchange, 95 Nev. ___, 598 P.2d 628, 629 (1979). But that axiom is tempered by the longstanding rule that a court must apply a contract as written where the language is plain and unambiguous. See Healey v. Imperial Fire Insurance Co., 5 Nev. [215] 268 (1869).
The so-called automobile business exclusions have engendered a considerable amount of litigation in the reported decisions. See Annots., 47 A.L.R.2d 556; 71 A.L.R.2d 964. Insurers have used many different formulations of the exclusion in policies written over the years. Indeed, it appears that insurers have revised the exclusion as various decisions have strictly construed previously used exclusionary language *286 to limit its applicability. Among the many formulations that fall within the general category of "automobile business exclusions," perceptive courts have recognized three basic types. See Continental National American Group v. Allied Mutual Insurance Co., 95 Idaho 251, 506 P.2d 478 (1973); Northern Assurance Co. v. Truck Insurance Exchange, 151 Mont. 132, 439 P.2d 760 (1968).
The first type, which has been most litigated, excludes coverages where the automobile is "used in an automobile business." Courts interpreting this type of exclusionary clause have said that the focus of inquiry in these cases is the use to which the vehicle is put and not the occupation of the driver. See, e. g., Consolidated Mutual Insurance Co. v. Security Insurance Co. of Hartford, 97 N.J.Super. 528, 235 A.2d 495 (Ch.Div.1967). Other cases have indicated that the existence of a bailment is the crucial point. See, e. g., Great Central Insurance Co. v. Harris, 46 Ill.App.3d 542, 360 N.E.2d 1151, 4 Ill.Dec. 776 (1977). At least one case, involving a department store parking lot, has held that the car must have been used for some purpose in the business itself. See Aetna Casualty & Surety Co. v. Allstate Insurance Co., 67 Misc.2d 333, 323 N.Y.S.2d 856 (Sup.Ct.1970).
The second type of automobile business exclusion, and apparently the rarest, denies coverage for liability arising out of the operation of an automobile business. See, e. g., Canadian Indemnity Co. v. Western National Insurance Co., 134 Cal.App.2d 512, 286 P.2d 532 (1955); West Michigan Dock & Market Corp. v. St. Paul-Mercury Indemnity Co., 82 F.Supp. 403 (W.D.Mich.1949). Under such a clause, it might well be important to examine whether a parking lot is the actual business of the party seeking coverage or is simply incidental to another business. That argument is unavailing to plaintiff here, however, because this action involves an exclusionary clause of the third type.
The third, and broadest, type of exclusion excludes from coverage drivers who are "employed or otherwise engaged" in an automobile business. In such clauses, the focus is clearly on the occupation or activities of the driver at the time the claim arises. See Continental National American Group v. Allied Mutual Insurance Co., 95 Idaho 251, 506 P.2d 478, 480 (1973).
The plaintiff relies heavily on two cases, involving the third type of exclusion, involving attendants of one sort or another at parking lots operated in connection with a hotel and a restaurant. Despite the factual similarity between those cases and the matter under consideration here, this Court finds them unpersuasive.
A very closely analogous case is Rosen v. Godson, 422 F.2d 1082 (5th Cir. 1970). There, as here, the named insured was allegedly injured because a parking lot attendant at a hotel negligently operated the vehicle. The Fifth Circuit, applying Florida law, reversed a district court decision finding the automobile business exclusion applicable. The Fifth Circuit ruled that the hotel was not in the automobile business, and operated the lot only as an incidental service to its customers. While Rosen might be distinguished on the ground that the hotel involved there did not charge for use of the parking lot, this Court must simply disagree with its reasoning and result. The Rosen Court failed to distinguish between the various types of automobile business exclusions, and relied on cases construing the "used in" type of automobile business exclusions, e. g., Chavers v. St. Paul Fire & Marine Insurance Co., 188 F.Supp. 39 (N.D.Ohio 1960), aff'd, 295 F.2d 812 (6th Cir. 1961), which the Fifth Circuit erroneously perceived as involving "substantially the same question."
In Piliero v. Allstate Insurance Co., 12 App.Div.2d 130, 209 N.Y.S.2d 90 (1960), the term "automobile business" was defined to include a "public parking place." The Court there refused to apply the exclusion to a private lot for the exclusive use of the patrons of a restaurant and bakery. Here, however, the automobile business is defined to include the occupation of parking automobiles and thus is clearly distinguishable. Moreover, in Piliero the "attendant" was *287 not an employee of the business but was a "volunteer" who offered to park cars for customers with the hope that he would be recompensed for his services by a gratuity.
Notwithstanding the plaintiff's argument to the contrary, the State Farm exclusionary clause is clear and unambiguous as applied to the facts of this case. Substituting the definition of "automobile business" for that term in the exclusion, and eliminating irrelevant terms used in the disjunctive, the provision reads as follows:
"This insurance does not apply . . . to the owned motor vehicle while used by any person while such person is employed or otherwise engaged in the business or occupation of . . . parking of land motor vehicles . . ., of the insured or of any other person or organization."
Clearly, Mr. Mason was employed and engaged in the occupation of parking cars at the time of the accident. His job title was "parking lot attendant," and he was acting in that capacity, specifically performing valet parking services, at the time of the alleged negligence.
The fact that a lawyer is able to make an argument as to the proper construction of any given language does not make the language ambiguous. The legal profession is widely reputed to be capable of noting some ambiguity between black and white.
The plaintiff attempts to make much of the final clause which modifies the term "automobile business" as that "of the insured or of any other person or organization." Transamerica urges that this requires a finding that the Golden Gate, and not merely Mr. Mason, must be engaged in an automobile business. Such a reading of the clause unreasonably stretches the language. To reach such a conclusion, it would be necessary to ignore the word "occupation." While the final clause may be redundant when the occupation is that of the person driving the car, this does not make the language ambiguous. The final clause is clearly intended to indicate that the automobile business exclusion applies regardless of whose "business" the driver of the car might be engaged in. While the clause might have been more artfully drawn, the Court will not read ambiguity into language where it does not exist.
This Court agrees with an Illinois Appellate Court which construed an identical provision and held that the State Farm automobile business exclusion is "plain and clear in its purpose and intent" and is entitled to an interpretation according to the "plain, ordinary meaning of the words." State Farm Mutual Auto Insurance Co. v. McAnally, 49 Ill.App.3d 475, 7 Ill.Dec. 338, 364 N.E.2d 499 (1977). Mr. Mason's use of the automobile in the course of his work as a parking lot attendant fits squarely within the language of the exclusion in Mrs. Chernik's automobile insurance policy.
Transamerica also contends that, even if the State Farm exclusion is applicable under the terms of the policy, the exclusion is void as contrary to Nevada statute. Plaintiff cites NRS 485.3091(2), which requires that each insurance policy issued as proof of financial responsibility under Nevada's Motor Vehicle Safety Responsibility Act, NRS Ch. 485, treat as an insured under the policy all persons who operate the vehicle with permission of the named insured. There is nothing in the record to indicate that Mrs. Chernik's policy was issued as such proof. The Nevada Supreme Court has held that the policy requirements of NRS Ch. 485 do not apply to policies other than those issued pursuant thereto. Estate of Neal v. Farmers Insurance Exchange, 93 Nev. 348, 350-51, 566 P.2d 81, 82 (1977). That same opinion declared, however, that any exclusion which would defeat the minimum required security against tort liability established by Nevada's Motor Vehicle Insurance Act, NRS Ch. 698 (repealed, 1979 Nev.Stats. ch. 660, § 9, p. 1519), is void but only to the extent that the exclusion would defeat the required minimum security. For all other purposes the exclusion would be considered viable. See Id. at 351-52, 566 P.2d at 83. Thus, State Farm apparently has an obligation, notwithstanding the exclusion in the policy, to provide coverage up to the limits set forth in NRS § 698.320, namely, $15,000 for damages arising out of bodily injury or death sustained by any one *288 person, with an aggregate limit of $30,000 for damages arising out of such injury or death of two or more persons as the result of a single accident, plus $5,000 for damages arising out of injury to or destruction of property. On the other hand, all other types of coverage under the State Farm policy, including the insurer's duty to defend, are effectively excluded by the automobile business exclusion of the policy.
This Court finds that State Farm must assume all the obligations imposed by NRS Ch. 698 with respect to the use of the Chernik automobile, but that these obligations do not include any duty to defend the Golden Gate in the action by Mrs. Chernik nor to indemnify Transamerica for the costs incurred in handling that defense.
The defendant's motion for summary judgment is granted. The plaintiff's motion for summary judgment is denied.
The foregoing memorandum decision constitutes this Court's findings of fact and conclusions of law.