**SOSENE ASIFOA and MOLI ASIFOA, Plaintiffs**

**v.**

**NATIONAL PACIFIC INSURANCE CO., LTD., Defendant**

High Court of American Samoa

23

Trial Division

CA No. 60-92

April 25, 1994

Before RICHMOND, Associate Justice, LOGOAI, Associate Judge, BETHAM, Associate Judge.

Counsel: For Plaintiffs, Gata E. Gurr
 For Defendant, Roy J.D. Hall, Jr.

Order Granting Plaintiffs' Motion for Summary Judgment and Denying Defendant's Motion for Summary Judgment:

Both parties have moved this court for summary judgment with respect to the issue of liability on the insurance policy underlying this case. For the reasons detailed below we deny the motion by defendant National Pacific Insurance, Co., Ltd. ("NPI") but grant the cross-motion by plaintiffs Sosene Asifoa and Moli Asifoa ("the Asifoas").

█ Summary judgment is appropriate where the pleadings and supporting papers show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." T.C.R.C.P. 56. In ruling on such a motion, the court must view all pleadings and

24

supporting papers in the light most favorable to the opposing party, *United States v. Diebold*, 369 U.S. 654 (1962), treat the opposing party's evidence as true, and draw from such evidence the inferences most favorable to him. *Lokan v. Lokan*, 6 A.S.R.2d 44,45 (1987).

This dispute centers on property insurance policy number XCF001/70019414 ("the policy") issued to the Asifoas for a consideration of $475.00 by NPI in March, 1991. NPI entirely prepared the policy. On December 6-10, 1991, when the policy was in force, Hurricane Val damaged the property and its contents. While the parties have settled on the amount due from NPI as regards the building, there remains a dispute as to the actual coverage of the aforesaid policy.

The Asifoas allege that the policy insured their building <u>and</u> its contents from fire or cyclone in the amount of $50,000.00, and NPI contends that no coverage for the <u>contents</u> of the insured structure was obtained. NPI moved for summary judgment and submitted an affidavit from Arnold Carter, branch manager of NPI, stating that the Asifoas had paid no additional consideration in order to insure the building's contents. As part of its response to the Asifoas' cross-motion, NPI later submitted the affidavit of Anna Auvaa, an underwriter for NPI, who stated that she was the one who assisted Mr. Asifoa and that he never mentioned an intention to have the buildings contents insured.

The Asifoas submitted Mr. Asifoa's affidavit in support of their cross-motion, stating that Paul Gray received plaintiff's application and was informed of their desire to have insurance coverage for both the building and contents. Additionally, this affidavit points out that it was the Asifoas' intention to insure the contents in order for them to receive the balance of their loan from the U.S. Small Business Administration ("SBA"), and that NPI knew of this requirement, listing SBA in the policy as the loss payee. The affidavit points out that the building was worth only $20,000.00, and the Asifoas contend, therefore, that the coverage obtained would have been unjustifiably high for merely the building itself.

■ An insurance policy is a contract and the same rules of construction applicable to other contracts are applicable to insurance policies. *Enterprise Tools, Inc. v. Export-Import Bank*, 799 F.2d 437, 439 (8th Cir. 1986), *cert. den'd* 94 L. Ed.2d 761 (1987), *citing* 2 Couch, Cyclopedia of Insurance Law § 15:1, 15:3 (2nd Ed. 1984); *Commercial Union Ins. v. State Farm Fire & Cas.*, 546 F. Supp. 543, 545 (D.C. 1982) (citations omitted). If an insurance contract is unambiguous, the vast majority of U.S. jurisdictions require that a court follow the prescriptions of the policy

as written, and need look no further in resolving any disputes. *Berne v. Aetna Ins. Co.*, 604 F. Supp. 958, 960-962 (D.C.V.I. 1985), *aff'd* 782 F.2d 1026 (1985); *St. Paul Fire & Mar. Ins. v. U.S. Fire Ins. Co.*, 655 F.2d 521 (3rd Cir. 1981).

■ Once a policy is found to be ambiguous, however, further inquiry is generally allowed by the court. *Allstate Ins. Co. v. Ellison*, 757 F.2d 1042 (9th Cir. 1985) ("Intent is an issue ... if the contract is ambiguous."). As stated by a Connecticut court, only if the court "makes a preliminary finding that the policy language at issue, taken either on its face or in the context of the entire policy, is ambiguous, should the Court consider the reasonable expectations of the insured . . . ," *Jarrius v. Maccabees Mut. Life Ins. Co.*, 587 F. Supp. 1301, 1305 (D. Conn. 1984).

We agree with this reasoning, and only if the insurance policy at issue is ambiguous will further inquiry by this court be necessary. If the policy is not ambiguous, the parties intent will be gleaned from the four corners of the contract and the dispute may be resolved as a matter of law. *See Rauch v. Underwriters at Lloyd's of London*, 320 F.2d 525, 531 (9th Cir. 1963); *Transamerica Ins. v. State Farm Mut. Auto. Ins.*, 492 F. Supp. 283 (D. Nev. 1980).

Many courts have struggled with, and defined, what constitutes "ambiguity" in the context of an insurance contract. Kansas law states that in construing an insurance policy courts may consider the language, the parties situation and the purpose to be accomplished when ascertaining parties intentions from the instrument as a whole. *Dronge v. Monarch Ins. Co. of Ohio*, 511 F. Supp. 1, 4 (D. Kan. 1979). "Contracts are not rendered ambiguous by the mere fact that the parties do not agree on the meaning of a specific policy term . . . . Ambiguity exists only when the policy terms at issue are subject to reasonable differing interpretations." *Potter v. Ranger Ins. Co.*, 732 F.2d 742, 743 (9th Cir. 1984) (citations omitted). "The language of the policy is examined from the viewpoint of one trained neither in law nor in insurance." *Combined Communications Corp. v. Seaboard Sur. Co.*, 641 F.2d 743, 745 (9th Cir. 1981) (citation omitted). "The fact that a lawyer is able to make an argument as to the proper construction of any given language does not make the language ambiguous." *Transamerica Ins.* at 287. Courts may not "create" ambiguity, even if the outcome would otherwise be harsh. *Combined Communications Corp.* at 745.

■ In the case before us, the dispute focuses on the body of the policy and an attached endorsement. Endorsements are forms added to basic policies

26

to address a situation's particular coverage needs. Endorsements become part of an insurance contract and must be construed with it. *Kalmbach, Inc. v. Ins. Co. of State of PA., Inc.*, 529 F.2d 552 (9th Cir. 1976), *on remand* 422 F. Supp. 44 (D. Alas. 1976). A policy and an endorsement should be construed together to give effect to all provisions. *Buntin v. Continental Ins. Co.*, 437 F. Supp. 132, 135 (D.C.V.I. 1977), *rev'd* 583 F.2d 1201 (3rd Cir. 1978), *on remand* 525 F. Supp. 1077 (D.C.V.I. 1981).

In this case, the first page of the policy states that the property insured is "ON BUILDING OF GENERAL STORE". The word "CONTENTS" is included in the endorsement on the sixth page of the policy, as being covered when damaged by a cyclone and enclosed by a building permanently in place. On the seventh page of the policy, under "Deductible," the endorsement to the policy outlines the deductible for the building. Under this provision, the wording says "CONTENTS - Same as Above," referencing for purposes of the contents the language used for the building's deductible.

A conflict exists between the first page of the policy and the wording of the endorsement. It is clear that under the policy's first page, damage to the building's contents is not covered, while under the endorsement, such damage is covered. When faced with this type of contrast, courts have consistently held that the wording of the endorsement holds sway, and a party's undisclosed intentions, particularly those of the insurer that prepared the document, cannot prevail. "If there is a conflict between the terms of the endorsement and those in the body of the main policy, then the endorsement prevails, particularly when it favors the insured." *St. Paul Fire & Mar. Ins.* at 524. "It is the general rule that an endorsement . . . attached to an insurance policy becomes and forms a part of the contract; . . . and that where the provisions in the body of the policy and those in the endorsement or rider are in irreconcilable conflict the provisions contained in the endorsement or rider will prevail ..." *Farmers Ins. Exchange v. Ledesma*, 214 F.2d 495, 498 (10th Cir. 1954); *see Price v. Zim Israel Navigation Co., Ltd.*, 616 F.2d 422 (9th Cir. 1980).

This course has been followed because endorsements are considered to be tailored to the particular needs of the insured. Unlike the more standardized general forms, endorsements are to reflect the needs and intentions of the parties. *See St. Paul Fire & Mar. Ins.*, *supra* at 524. This resolution of intrinsic language differences does away with any ambiguity. *Long v. Adams*, 312 S.E.2d 262, 265 (S.C. App. 1984). In this case, the endorsement governs, and liability on the insurance policy

27

is properly resolved as a matter of law in favor of the Asifoas.

We hold that the policy covers the contents of the building in question. Therefore, we deny summary judgment to NPI and grant summary judgment to the Asifoas.

It is so ordered.