J. Kenneth Servé, J.
This is an action between two insurance companies, Jamestown Mutual Insurance Company, plaintiff (hereinafter designated Jamestown) and General Accident, Fire and Life Assurance Corporation, defendant (hereinafter designated General Accident), relative to a judgment obtained against Bruce Baldwin, doing business as Baldwin’s Shell Service by John B. Gould and Gould Flower’s Inc. after a trial of the issues in the Orleans County Court. The judgment is in the amount of $1,246.97 and has been paid by Jamestown. Baldwin was named as a coplaintiff in this present action now before the court but by stipulation Jamestown is now the sole plaintiff. This action was tried before the court without a jury.
Prior to November 20, 1964 General Accident had issued a policy of liability insurance, CA-22-641-63, to Peter J. Navarra and this policy covered a 1951 Chevrolet truck which was owned by Navarra. Peter J. Navarra died on November 20. 1964 and *953 on December 2, 1964 Elizabeth. A. Navarra, his widow, received letters testamentary upon his estate. On January 9, 1965 Peter J. Navarra was the registered owner of the afore-mentioned 1951 Chevrolet truck.
On January 9,1965, and for .several years thereto, Bruce Baldwin managed and operated an automobile service station under the name of Baldwin’s Shell Service at 2129 Main Street, Albion, New York. Mr. and Mrs. Navarra had been frequent and steady customers of the Baldwin service station. Following Mr. Navarra’s death, and at a time about two or three weeks prior to January 9, 1965, Mrs. Navarra requested Baldwin to sell the 1951 Chevrolet truck for $100, and he agreed to do so as a favor to her. With the permission and consent of Mrs. Navarra, Baldwin went to the Navarra residence to get the truck and to bring it to his service station where it was to be displayed for sale. When Baldwin arrived at the Navarra residence, he found the keys in the truck but he was unable to start the vehicle because of the condition of the battery. Baldwin towed the truck to his service station ¡and, after charging the battery, Baldwin placed a “ for sale ” sign upon the truck and then parked it on the south side of his service station property. The front end of the truck was facing northerly towards the Gould Flower’s store which was adjacent to the north line of the Baldwin service station property. After the truck was so parked by Baldwin it remained in its original parked position for about two or three weeks and until the early morning hours of January 9, 1965.
Baldwin closed his service station at the end of business on January 8, 1965 at about 9:00 p.m. When he left the service station that night, the truck was in the same position as when he had parked it some two or three weeks prior thereto. At approximately 7:00 a.m. on January 9, 1965, and after receiving a phone call from a village policeman, Baldwin returned to his service station and there observed that the Navarra truck had moved from its position where he had parked it some two or three weeks prior thereto and collided with the Gould Flower’s store and the window of such store was broken. Baldwin notified Mrs. Navarra of the incident and she thereafter came to the scene and subsequently she reported the occurrance to General Accident. Baldwin also reported the incident to Jamestown, his insurance carrier.
John B. Gould and Gould Flower’s Inc. (hereinafter designated Gould) instituted ¡an action against Baldwin and Elizabeth Navarra individually and as executrix to recover property damages. Gould alleged and claimed in the bill of particulars that *954 the accident was caused by reason of the negligent manner in which Baldwin had parked the truck. On June 5, 1967 the attorneys for Jamestown, the insurance carrier for Baldwin, wrote to the attorneys for General Accident and demanded that General Accident furnish coverage to Baldwin, as it was claimed that Baldwin was an additional insured under the provisions of the General Accident policy which had been issued to Navarra. The attorneys for General Accident notified the attorneys for Jamestown by letter dated June 14, 1967 that General Accident would not furnish the coverage for Baldwin, and this letter of declination noted that the Navarra General Accident policy provided that coverage did ‘ ‘ not apply to operators of service stations with respect to any accident, arising out of the operation thereof.” The Gould action proceeded to trial and resulted in the afore-mentioned judgment against Baldwin. At the close of the plaintiff’s case the action against Mrs. Navarra individually and as executrix was dismissed.
This action brought by Jamestown is for judgment against General Accident for the amount of the $1,246.97 judgment in the Gould action, which has been paid by Jamestown, plus the legal expenses incurred in the defense of the Gould action and also the necessary legal expenses for prosecuting this action.
The liability insurance policy issued by General Accident to Navarra, in respect to the Chevrolet truck, provided that it would furnish coverage for the insured in respect to property damage liability as follows: “ Coverage B — Property Damage and Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of the automobile.”
The policy defines the term ‘ ‘ insured ’ ’ as follows: ‘ ‘ the unqualified word ‘ insured ’ includes the name insured and, if the name insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the name insured or such spouse or with the permission of either. The insurance with respect to any person or organization other than the name insured or such spouse does not apply:
“ (1) To any person or organization or to any agent or employee thereof, operating * * * service station * * * *955 with, respect to any accident arising out of the operation thereof ”.
"When Baldwin, in compliance with Mrs. Navarra’s request to sell the truck, went to the Navarra home and took the truck with the keys in it, and towed it to his service station, and placed a “for sale ” sign upon it, and parked it on the service station property to display it for sale, he was using the truck with the permission and consent of Mrs. Navarra. By such use of the truck, Baldwin came within the ‘ ‘ while using ’ ’ and ‘‘ actual use ” provision of the Navarra General Accident liability policy, and he thereby became an additional insured within the language and intent of the omnibus provision of such policy (Maryland Cas. Co. v. Marshbank, 226 F. 2d 637 ; Williams v. United Servs. Auto. Assn., 250 F. Supp. 502 ; Employers Mut. Cas. Co. v. Poe, 191 So. 2d 541 [Miss.] ; see Ann. 4 ALR. 3d 10, 30 ; Ann. 5 ALR 2d 600, 606).
As an additional insured under Navarra’s General Accident policy, then, General Accident would have to pay on Baldwin’s behalf all sums of money which he became legally obligated to pay as damages caused by an accident which arose out of his use of the truck.
The words “ arising out of the use of the automobile ” are broad and comprehensive terms meaning- “ originating from” or “ having its origin in ” or “ growing out of ” or “ flowing from ” (Red Ball Motor Frgt. v. Employers Mut. Liab. Ins. Co., 189 F. 2d 374 ; Fidelity & Cas. Co. of N. Y. v. Lott, 273 F. 2d 500). Although an automobile liability policy should not be interpreted to cover damages that result from acts remote from the use of the automobile, the word “ remote ” in such context does not refer to the element of time but it is used in the sense that the accident and damages are unrelated to or unconnected with the use of the vehicle (Schmidt v. Utilities Ins. Co., 353 Mo. 213).
Despite the fact that the Gould accident occurred approximately two or three weeks after Baldwin parked the truck at his service station, the truck was not moved thereafter from the position where it was initially parked by Baldwin until in the early morning hours of January 9, 1965 when it traveled down the grade of the service station property and collided with the Gould store. It does not appear from the evidence that anyone observed the occurrence of the Gould accident. There is no evidence that any person did anything to the truck after it was so parked by Baldwin to cause it to move and come in contact with the Gould store. It would be pure speculation to *956 say that some third person on January 9, 1965 intervened and did something to the truck to cause it to move and become involved in the accident. There has been no evidence of an intervening cause or independent act that occurred between Baldwin’s use of the truck in parking it at his service station and the occurrence of the Gould accident (Roche v. United States Fid. & Guar. Co., 247 App. Div. 335).
It is the finding of this court that the Gould accident and the resultant damages did arise out of Baldwin’s use of the Navarra truck in parking the same on his service station property. Baldwin did not use the Navarra truck in connection with the operation of his service station business and further the Gould accident did not arise out of the operation of the service station. Baldwin did not come within the exclusionary provisions of the policy (Juszkiewicz v. New Jersey Fid. & Plate Glass Ins. Co., 210 App. Div. 675).
In respect to the Gould accident Baldwin, as an additional insured, was entitled to the coverage, indemnity, representation by counsel and such other benefits as were made and provided for ias an additional insured in the General Accident liability policy.
The plaintiff, Jamestown, is entitled to judgment for the sum of $1,246.97 as the amount of the judgment paid by it for Baldwin in the Gould action and it is also entitled to the further sum of $1,080.85 paid by Jamestown to its attorneys in defending Baldwin in the Gould action, together with interest, costs and disbursements. However, Jamestown is not entitled to judgment for its legal expenses in prosecuting this action (Doyle v. Allstate Ins. Co., 1 N Y 2d 443).