**PROTECTIVE INSURANCE COMPANY,**
Appellant (Defendant),

v.

**COCA–COLA BOTTLING COMPANY—
INDIANAPOLIS—INCORPORATED,**
Appellee (Plaintiff).

No. 2–1282A442.

Court of Appeals of Indiana,
Second District.

Aug. 30, 1984.

Laura B. Worrell, Hall, Render & Killian, Indianapolis, for appellant.

William M. Osborn, Osborn & Hiner, Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Protective Insurance Company (Protective) appeals a judgment entered against it in favor of Coca-Cola Bottling Company— Indianapolis—Incorporated (Coke) in Coke's declaratory judgment action, claiming Coke is not an additional insured under an omnibus clause of an automobile insurance contract between Protective and Cox Motor Transport, Inc. (Cox) because of its "use" of Cox's truck.

We reverse.

## FACTS

This litigation arose from a wrongful death action brought by the executrix of the estate of James H. Hanners (Hanners). The case was tried to the bench, and evidence included stipulations, testimony, and discovery materials from which the court drafted specific findings of fact. The facts are not in dispute.

Protective issued an automobile liability insurance policy to Cox, a trucking company, on July 1, 1976. Cox entered into a hauling contract with Coke wherein it agreed to transport Coke's trailers to various destinations. To fulfill the contract, Cox leased a tractor from Hanners on January 21, 1977. Hanners rode in the tractor with Cletis Russelberg (Russelberg), a driver supplied by Cox.

On February 3, 1977, Hanners and Russelberg were completing a delivery of a Coke-owned trailer full of empty bottles to the Coke bottling plant in Indianapolis. As was the custom, Hanners and Russelberg were admitted to the plant at the gate by a Coke employee. The gatekeeper instructed Russelberg to park the truck at the loading dock. Russelberg, however, saw the dock was full and, pursuant to his query, was directed by the Coke night dispatcher to park the unit at the north end of the parking lot. After the unit was positioned and the latch connecting the tractor to the trailer had been pulled, Russelberg attempted to disconnect the tractor from the trailer by driving away. Because of an accumulation of ice and snow on the parking lot, he was prevented from doing so. During their attempt to rock the tractor free, Hanners became trapped between the tractor wheels and the trailer. Rescue efforts were hampered by the snow and ice covered parking

lot. Hanners was finally freed from under the wheels of the tractor, but died shortly thereafter.

Hanners's executrix sued Cox, Russelberg, and Coke. Coke requested Cox's insurer, Protective, to defend the action, but Protective declined. A statement of contentions of liability and damages filed by the executrix and incorporated by the court in the findings of fact and conclusions of law in the instant case, alleged, *inter alia*, negligence against Coke in its failure to inspect the premises, maintenance of a dangerous condition on the premises, failure to use due care under the circumstances, failure to provide a place safe for delivery, failure to instruct Hanners or Russelberg in a proper manner, and failure to exercise due care in attempting to extricate Hanners. The parties settled the wrongful death action, and Coke pursued this declaratory judgment action to recover a $20,000 settlement contribution paid by its insurer, Royal Globe Insurance Company (Royal Globe).

The trial court found Protective's loading and unloading limitation of coverage clause referred to the unloading of cargo and did not apply to this situation. Further, the court held Coke was "using" the tractor with Cox's permission and, as such, was an additional insured under Protective's policy. Protective's "use" clause appears in the section defining "persons insured" and reads in pertinent part that, "(c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission" is an insured. *Record* at 725. Because Protective and Royal Globe were found to be dual primary insurers of

Coke, based upon their respective policy limits, Coke received a money judgment against Protective equal to coverage owed, plus costs, fees and expenses awarded pursuant to the Uniform Declaratory Judgments Act. *Ind. Code* 34-4-10-1 to -16 (1982).

## ISSUE

Protective and Coke raise various issues; however, our determination of one of them disposes of all:[1]

Did the trial court err in concluding, as a matter of law, Coke "used" Cox's leased tractor and as a permissive user was an additional insured under Cox's automobile liability policy with Protective?

## DECISION

PARTIES' CONTENTIONS—Protective attacks the basis of any liability against it by arguing Coke's actions did not constitute "use" of Cox's tractor, hence no coverage should attach from Coke's alleged negligence. Coke responds their control over the premises and direction of the vehicle with its cargo to the accident site constitutes "use" and entitles Coke to coverage under Protective's policy as an additional insured.

CONCLUSION—Coke's "use" of Cox's leased tractor was not the kind of active use contemplated by Protective's automobile liability policy so as to make it an additional insured.

 This is an occasion which prompts us to observe that words are "little creatures waiting to do our bidding." Some of the words doing our bidding are multifaceted. Their meaning must be narrowed into more specific words of art. Such a word is "use".[2] The better reasoned cases inter-

1. Because we reverse, we need not review Protective's allegations of error concerning the loading and unloading clause or the improper award of attorney's fees and costs. Likewise, we need not reach Coke's claim on cross-appeal for additional attorney's fees.

2. Use of an item could mean one may "enjoy, hold, occupy or have in some manner the benefit thereof", *Bryson v. Hicks,* (1922) 78 Ind.App.

111, 113, 134 N.E. 874, 875, such as an estate in land. Another definition is "applying to one's service, employment, or conversion to some purpose", such as in the bailment of an item. *Independent Torpedo Co. v. J.E. Clark Oil Co.,* (1911) 48 Ind.App. 124, 126, 95 N.E. 592, 593. Or in the context of zoning, use is the purpose for which a building is designed, arranged or intended or for which it is occupied or main-

preting "use" as that word appears in an omnibus clause in a truckman's liability policy deny coverage unless the potential insured exercises direct control over the vehicle.[3]

■ Faced with an ambiguous contract term in an insurance policy,[4] the trial court in its conclusion of law number three found that Coke was an additional insured under Protective's policy because Coke was "using" the tractor with the permission of the named insured, Cox. The court supports this interpretation of "use" with four reasons. First, the dispatcher had a right to control and did control the tractor by directing it to the place of the accident. Second, Coke exercised supervisory control over the tractor's entry to its property. Third, the tractor furthered Coke's business by providing a means of delivering empty bottles to its plant (a benefit), and finally, the tractor was parked on Coke's premises with the consent of Cox. Reasons one, two, and four are similar in that all are indicia of control which, cumulatively, constitute "use" according to Coke.

■ Of a different tenor is reason number three. It implies "use" is determined by benefit from the leased item. Coke argues it is a "user" because the tractor was converted to its service and benefit. Although this argument is attractive, application of the "benefit" definition of use to an omnibus insurance clause has generally been limited by Indiana courts to bailment cases. *See, e.g., Independent Torpedo, supra.* It is true a bailee who is employing a

bailed item in his service is "using" the item within the context of the facts presented. However, if we were to impute this general bailment definition to the narrow, more precise context commonly expected in automobile liability insurance policies, we would unduly expand liability in a manner not contemplated by the parties. Employing a vehicle in one's service is an *indicator* of use, but it requires the lateral support of control to constitute "use".

So, we look at the degree of control necessary to support a legal conclusion of "use". Indiana cases directly on point do not exist.[5]

Control over a vehicle, by someone other than a driver or passenger, which is so closely related to its operation to be the equivalent of use has been discussed in a variety of fact situations. In *Insurance Co. of N. America v. Royal Globe Ins. Co.*, (1981) 30 Wash.App. 78, 631 P.2d 1021, an equipment company hired a trucking company to haul a backhoe from one town to another. The trucking company supplied a tractor-trailer and a driver for the job. An equipment company employee followed the tractor-trailer in a flag car supplied with a radio and gave directions and signals to the driver to assist him in guiding the backhoe. A lawsuit ensued because the boom section of the backhoe struck an overpass. Construing an omnibus clause identical to the one before us, the Washington Court of Appeals found that, while it is "probably impossible to formulate an exact measure of the degree of control" which must be exercised in order to bring the person exer-

tained. *Pleasureland Museum, Inc. v. Dailey*, (1981) Ind.App., 422 N.E.2d 754.

3. An omnibus clause extends insurance coverage, in proper circumstances, to any person using the insured vehicle. COUCH ON INSURANCE 2d (Rev. ed.) § 45.293.

4. Construing ambiguous insurance policies requires us to apply contract law, *Loving v. Ponderosa Sys., Inc.*, (1983) Ind.App., 444 N.E.2d 896, and to consider all provisions of the policy. *Barmet of Ind., Inc. v. Security Ins. Group*, (1981) Ind.App., 425 N.E.2d 201, *trans. denied; Stockberger v. Meridian Mut. Ins. Co.*, (1979) Ind.App., 395 N.E.2d 1272.

5. Although not cited by either party, we note one Indiana case dealing with "use" of an automobile. In *Challis v. Commercial Standard Ins. Co.*, (1946) 117 Ind.App. 180, 69 N.E.2d 178, this court construed the word "use" in a parking lot owner's liability policy to mean putting to one's own service. This case, however, arose from a dissimilar fact situation, distinguishing it from the case at hand. Challis's insurance policy excluded coverage for accidents arising out of the use of motor vehicles. Construing the insurance policy in favor of the named insured to prevent the defeat of indemnification, this court found driving an automobile did not constitute use and, hence, the insured was covered.

cising the control within the scope of the omnibus clause, the giving of signals to the actual operator of the vehicle did constitute "use". *Id.* 631 P.2d at 1023 quoting *Hake v. Eagle Picher Co.* (7th Cir.1969) 406 F.2d 893, 896.

Similarly in *Woodrich Construction Co. v. Indemnity Insurance Co.*, (1958) 252 Minn. 86, 89 N.W.2d 412, a general contractor was held to be an additional insured under a subcontractor's auto policy because the general contractor's employees gave arm and hand signals to direct the movement of the subcontractor's truck driver. Their directions resulted in injury to one of their employees.

The language used by the court stressed the necessity of active control:

> "if as an incident of and in the furtherance of his construction work, a general contractor assumes *active control* or *guidance* of a backward movement of a truck provided by a subcontractor, and his negligence in the exercise of that control and guidance is a proximate cause of the accident, a general contractor thereby participates in the operation of the truck to such an extent as to be a user of the vehicle."

*Id.* at 94, 89 N.W.2d at 418.

*Jamestown Mutual Ins. Co. v. General Accident, Fire and Life Ins. Corp.*, (1971) 66 Misc.2d 952, 322 N.Y.S.2d 806, cited by Coke, can be distinguished. Here the individual asserting use and demanding coverage had driven and parked a friend's truck on his own property. Two weeks later, when the truck rolled away, the nonowner *driver* was afforded coverage as a user of the vehicle. In contrast, the actual driver and operator of the vehicle in the case at bar was Russelberg, who was not a Coke employee.

Unlike the situation before us, both *Woodrich* and *Insurance Co. of N. America* involve actual direction of the vehicle's movements at the time of the accident. Each party afforded coverage "assumed active control or guidance" of the vehicle. *Woodrich*, supra, at 94, 89 N.W.2d at 418.

As evidenced by the record and the trial court's findings of fact, Coke had exclusive control over admitting persons to its property and over the loading and unloading of cargo. However, Coke's dispatcher did not actively control, guide, or direct the movement of Cox's leased vehicle at the crucial moment, *i.e.*, when the truck was being disconnected. *Record* at 728. At that point Coke's control was passive. Passive control of the type exercised in the case at bar does not constitute "use". The term "use" or "actual use" utilized in this omnibus clause, *record* at 725, suggest activity that assists in propelling or directing the vehicle to a place where it ceases to be employed.

Although courts considering this issue have reached an opposite result, there is no minority or majority division. Our research indicates each case must turn on its facts, depending upon the exact measure of control a nondriver has exercised over a particular automobile. When faced with this issue, courts which have rejected "user" omnibus coverage fall into two categories. First, are courts that have adopted a control test, but have determined control exercised over a vehicle in a particular instance is too remote to merit coverage of the loss suffered. Second, are courts which focus on proximate cause of the loss and ignore use. *Continental Ins. Co. v. United States Fidelity & Guar. Co.*, (1974 Alaska) 528 P.2d 430; *J. Scheer and Sons Co. v. Travelers Indem. Co.*, (1962) 35 Misc.2d 262, 229 N.Y.S.2d 248.

So, we conclude that the words "use", "user", and "actual use", appearing in Protective's omnibus clause, restrict coverage to those persons who have some active, direct relationship with the insured vehicle. While we will not remove from coverage a risk which a policy can be reasonably construed to protect against, *American States Ins. Co. v. Aetna Life & Cas. Co.*, (1978) 177 Ind.App. 299, 379 N.E.2d 510, we also decline to extend coverage to one remotely connected with the insured vehicle. A contrary holding would

force truck owners and operators who exercise little or no control over the premises upon which they unload, to bear the financial burden of accidents resulting from the negligent maintenance of the receiving premises. *Wakefern Food Corp. v. General Accident Group*, (1983) 188 N.J.Sup. 77, 455 A.2d 1160; *see also Indiana Lumbermens Mut. Ins. Co. v. Statesmen Ins. Co.*, (1973) 260 Ind. 32, 291 N.E.2d 897.

Reversed.

SHIELDS, J., concurs.

SULLIVAN, J., concurs in result with opinion.

SULLIVAN, Judge, concurring.

I join the decision to reverse the judgment below, notwithstanding the failure of the opinion to address the issue of the application, *vel non*, of the "loading or unloading" provision of the policy. I do so because *Protective Insurance Co. v. Coca-Cola Bottling Co.* (4th Dist.1981) Ind.App., 423 N.E.2d 656 is the law of this case. Although I have strong reservations concerning the correctness of some portions of that earlier Court of Appeals decision, it held that Coca-Cola, as a matter of law, was not a "borrower" of the vehicle. *Cf. Indiana Lumbermens Mutual Insurance Co. v. Statesman Insurance Co.* (1973) 260 Ind. 32, 291 N.E.2d 897, *reversing* the Appellate Court decision at 274 N.E.2d 419. The loading and unloading provision of the policy was therefore held not applicable to the transaction here involved. For this reason I concur.