AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Appellant (Plaintiff),

v.

NATIONAL INSURANCE
ASSOCIATION, Appellee
(Garnishee Defendant).

No. 49A02–9009–CV–506.

Court of Appeals of Indiana,
Second District.

Sept. 9, 1991.

Rehearing Denied Oct. 16, 1991.

Randolph A. Leerkamp, Kyle A. Jones, Carter & Leerkamp, Indianapolis, for appellant.

Glenn E. Davis, Sr., Davis Davis & Langan, Indianapolis, for appellee.

BUCHANAN, Judge.

### CASE SUMMARY

Plaintiff-appellant American Family Mutual Insurance Company (American) appeals from the entry of summary judgment in favor of garnishee defendant-appellee National Insurance Association (National), claiming that the trial court misconstrued the word "use" in National's insurance policy.

We affirm.

### FACTS

The facts most favorable to the trial court's judgment reveal that on September 7, 1985, Russell Issac (Issac) was involved in an automobile accident with Lisa Marion (Marion). Issac was driving a van owned by Michael Brown (Michael). Issac had agreed to perform body repair on the van for Michael and was taking the van to a body shop to complete the repairs at the time of the accident.

Marion was insured by American, and American obtained a judgment for $24,-653.10 against Issac. Issac did not have sufficient resources to satisfy the judg-

ment and American brought proceedings supplemental against National, claiming National was liable pursuant to an insurance policy it had issued to Marva Brown (Marva), Michael's wife.

National moved for summary judgment, claiming Issac's operation of Michael's van was excluded under the following policy provisions:

"This policy does not apply under Part 1:

. . . . .

(g) to an owned automobile while *used* by any person while such person is employed or otherwise engaged in the automobile business. . . .

. . . . .

'automobile business' means the business or occupation of selling, repairing, servicing, storing or parking automobiles."

*Record* at 8–9 (emphasis supplied).

On May 15, 1990, the trial court granted National's motion for summary judgment.

## ISSUE

Did the trial court misconstrue the word "used" as it appears in National's policy?

## DECISION

*PARTIES' CONTENTIONS*—American argues that "used" in National's policy means "put to one's service" and that because Issac was driving the van to repair it for Michael, he was not "using" it within the meaning of the exclusion. National responds that the word "used" in the policy is accurately defined as "operated" and therefore Issac was using the van at the time of the accident.

*CONCLUSION*—Summary judgment was properly entered.

This is a battle between two insurance companies in which one company (American) seeks a vicarious benefit from its in-

terpretation of language in the other company's policy (National). At issue is the word "used" as it appears in a clause excluding coverage if an owned automobile is being "used" by any person employed or engaged in the automobile business.

Its interpretation is not before us in the usual context of insured vs. insurer so the interpretative rules of that relationship are not pertinent. Grasping the true meaning of a word in a given circumstance is often a slippery task. We have previously commented [1] that "words are 'little creatures waiting to do our bidding.' Some of the words doing our bidding are multifaceted. Their meaning must be narrowed into more specific words of art." And so it is here. What is the interpretation to be given to the word "used" appearing in the exclusionary clause of National's policy?

American leans heavily on *Challis v. Commercial Standard Ins. Co.* (1946), 117 Ind.App. 180, 69 N.E.2d 178, *trans. denied,* for its interpretation of the word "used." In *Challis,* we considered an insured that operated a parking lot. The insured's policy excluded coverage for accident arising from the use of motor vehicles. Construing the policy in favor of the named insured, this court decided that the driving of a vehicle between lots owned by the insured did not constitute "use" as defined by the policy. We concluded that "use" in the policy under consideration was interpreted as meaning "to put to one's own service." *Id.* at 182, 69 N.E.2d at 179. We then concluded that the insured's moving of the automobile involved in the accident was part of the service to the owner of the vehicle and that the insured had not put the vehicle to its own service.

As we observed in *Protective Ins. Co. v. Coca–Cola Bottling Co.* (1984), Ind.App., 467 N.E.2d 786, *trans. denied,* however, that factual situation is dissimilar and distinct from the consideration of whether an automobile liability insurance policy ex-

---

1. *Protective Ins. Co. v. Coca–Cola Bottling Co.* (1984), Ind.App., 467 N.E.2d 786, 788, *trans.* denied.

tends coverage to another's use of the covered vehicle. *Id.* at 789 n. 5. In *Protective*, a noninsured was seeking coverage under the vehicle owner's insurance policy. The noninsured claimed that it was "using" the vehicle in question because it was putting the vehicle into its service and benefit. We acknowledged that defining "use" as "employing an item in one's service" was generally recognized in bailment cases, but we concluded: "However, if we were to impute this general bailment definition to the narrow, more precise context commonly expected in automobile liability insurance policies, we would unduly expand liability in a manner not contemplated by the parties." *Id.* at 789.

■ By our reading of National's policy with Marva, we cannot agree with American that the parties contemplated defining the word "use" as it was defined in *Challis.* When interpreting an insurance policy, our goal is to ascertain and enforce the parties' intent as manifested in the insurance contract. *Asbury v. Ind. Union Mut. Ins. Co.* (1982), Ind.App., 441 N.E.2d 232. We cannot extend coverage beyond that provided in the contract and we may not rewrite the plain and unambiguous language of the insurance contract. *Landis v. American Interinsurance Exch.* (1989), Ind.App., 542 N.E.2d 1351, *trans. dismissed.*

In *Indiana Lumbermens Mut. Ins. Co. v. Statesman Ins. Co.* (1973), 260 Ind. 32, 291 N.E.2d 897, our supreme court considered a claim by one insurance company that injuries to an individual while on its insured's property were also covered by the individual's employer's truck liability insurance policy. When construing the truck liability policy, the supreme court said:

> "However, we are in fact in this instance not dealing with the two parties to the contract. The party claiming to be an insured in this case never paid a penny's premium to the insurer. We are therefore not in a situation where we must construe the contract language any certain way and can seek out the general intent of the contract from a neutral stance."

*Id.* at 34, 291 N.E.2d at 899.

■ Similarly, as neither American nor Issac are parties to the insurance contract between National and Marva, we will seek out the general intent of National's policy from a neutral stance.

National's policy states that it does not apply "to an owned automobile while used by any person *while such person is employed or otherwise engaged in the automobile business....*" *Record* at 9 (emphasis supplied). There is no question that Issac was employed or otherwise engaged in the automobile business, and American has so stipulated. *Reply brief* at 4.

This exclusion is one of three types of exclusions, commonly referred to as "automobile business" exclusions in the insurance industry, which have been the subject of considerable litigation throughout the country. *See Transamerica Ins. Group v. State Farm Mut. Auto Ins. Co.* (D.Nev. 1980), 492 F.Supp. 283; *Continental Nat. Am. Group v. Allied Mut. Ins. Co.* (1973), 95 Idaho 251, 506 P.2d 478; *State Farm Mut. Auto. Ins. Co. v. McAnally* (1977), 49 Ill.App.3d 475, 7 Ill.Dec. 338, 364 N.E.2d 499.

While no Indiana court has yet considered the precise exclusion before us, in every case in other jurisdictions the courts have always employed the word "use" as being synonymous with "drive" or "operate." *See Transamerica, supra; Continental, supra; McAnally, supra.* American claims that *Continental* and similar cases are not relevant because they did not expressly consider the definition of the word "use" in their decisions. It is true that the definition of "use" was not an issue of appellate contention in *Continental* and many of the cases considering "automobile business" exclusions. That fact, however, does not alter the import of the universally accepted meaning of the word "use." In numerous cases, with factual situations and insurance policy language indistinguishable from those we consider, courts have unanimously concluded that a mechanic's accident while driving an insured vehicle was excluded under the

"automobile business" exclusion. *See Transamerica, supra, Continental, supra; McAnally, supra;* and cases cited therein.

The court in *Truck Ins. Exch. v. Aetna Casualty & Sur. Co.* (1975), 13 Wash.App. 775, 538 P.2d 529, had before it the "automobile business" exclusion in the exact language as it appears in National's policy. This case involved an insurer of a service station who sought coverage from the insurer of an automobile that was involved in an accident at the service station. The accident occurred when a mechanic at the station started the engine of the insured vehicle during a tune-up of the vehicle's engine. The vehicle lurched forward and injured another person. The vehicle's insurer claimed the "automobile business" exclusion in the policy covering the vehicle excluded coverage because the vehicle was being "used" in the automobile business.

It was decided that the exclusion did not apply because the mechanic did not "use" the vehicle as contemplated by the policy. The court concluded:

> "The purpose of the new exclusionary clause relating to the use of the automobile by persons engaged in the automobile business was to exclude from coverage risks occurring while the vehicle *was being driven for any purpose* by the garage owner or his employee, *particularly where the vehicle was being driven in picking up or delivering the vehicle to the owner pursuant to the performance of the repair work.*"

*Id.* at 779, 538 P.2d at 532 (emphasis supplied). We agree that the intent of the "automobile business" exclusion was to exclude from coverage risks occurring while a vehicle is being driven or used as a means of transportation.

Keeping in mind that this is a dispute between two insurance companies and not between an insured and an insurer, the trial court quite properly concluded Issac was driving Brown's van in order to effectuate repairs so that he was "using" the van within the purview of the "automobile business" exclusion.

Summary judgment affirmed.

HOFFMAN and SHIELDS, JJ., concur.