Sally **ANDERSON** and Donnie R. Anderson, as Parents and Next Friends of Laura Anderson, a Minor, Sally Anderson and Donnie R. Anderson, as Parents and Next Friends of Donnie R. Anderson, Jr., a Minor, Sally Anderson, Individually, and Donnie R. Anderson, Individually, Plaintiffs–Appellants,

v.

James H. **BENNETT**, Individually, and d/b/a Bennett Drywall, Defendant–Appellee.

and

Government Employees' Insurance Company, Appellee.

Court of Appeals of Tennessee, Western Section, at Jackson.

Feb. 13, 1992.

Application for Permission to Appeal Denied by Supreme Court May 26, 1992.

John J. Heflin, III, Memphis, for plaintiffs-appellants.

James R. Garts, Jr., Memphis, for defendant-appellee.

J. Minor Tait, Jr., Katherine M. Anderson, Memphis, for appellee.

FARMER, Judge.

The plaintiffs appeal from the trial court's order granting summary judgment in favor of Government Employees Insurance Company (GEICO). The trial court held that as a matter of law the plaintiffs' injuries did not arise out of the ownership, maintenance or use of the defendant Bennett's vehicle, but instead arose from Bennett's use of a firearm. The trial court further directed that the order be considered final pursuant to Rule 54.02 T.R.C.P.

On the afternoon of February 12, 1990, some neighborhood children were playing in a vacant lot on Sanga Circle in Shelby County, Tennessee. As James Bennett drove his 1990 Ford Bronco automobile past the vacant lot, one of the children threw a dirt clod which hit Bennett's vehicle. Angered by the incident, Bennett turned his vehicle around and drove in the direction of the children. The children ran behind the plaintiffs' home. When Bennett saw the children again, he reached for his loaded .357 magnum pistol and discharged it into the air in the general direction of the children in order to frighten them. The bullet struck 12–year–old Laura Anderson, who moments before had left her home in order to join the children at play.

The Andersons sued James H. Bennett, individually and d/b/a Bennett Drywall. Process was served upon GEICO, the uninsured/underinsured motorist carrier for the Andersons' family automobile. The uninsured/underinsured motorist provisions of GEICO's policy covered the following losses:

> compensatory damages for *bodily injury* caused by accident which the *insured* is legally entitled to recover from the owner or operator of an *uninsured auto* or a *hit-and-run auto* arising out of the ownership, maintenance or use of that auto. (emphasis in original)

On appeal, the Andersons have presented the following issues for review:

I. Whether the Trial Court erred in granting summary judgment in favor of Government Employees Insurance Company by ruling that as a matter of law the plaintiffs' injuries and damages did not arise out of the ownership, maintenance or use of the automobile operated by defendant James Bennett.

II. Whether it is for the Court or for the jury to determine in close cases whether the plaintiffs' injuries and damages arise out of the ownership, maintenance or use of an automobile.

In *Travelers Insurance Co. v. Aetna Casualty & Surety Co.*, 491 S.W.2d 363 (Tenn.1973), the Supreme Court had occasion to interpret the meaning of the phrase "arising out of the ownership, maintenance or use" of an automobile. In *Travelers*, a college student, Raymond Louis Muehlman, was loading a shotgun into the automobile of a fellow student, Robert J. Rapai, when the shotgun discharged and injured Rapai. In a subsequent lawsuit filed against

Muehlman's automobile liability carrier[1], the Chancellor held that Rapai's injuries resulted from the use of the automobile as defined under the liability policy. The Supreme Court stated that

[i]t is a basic rule of contracts that a written agreement, in case of doubt as to the meaning thereof, be interpreted against the party who has drawn it. Am.Jur., Contracts, § 252. That principle is frequently applied to insurance contracts, and in particular to the phrase "arising out of the ownership, maintenance, or use" of a vehicle in liability insurance contracts. Am.Jur., Insurance § 258; *Richland Knox Mutual Insurance Co. v. Kallen,* 376 F.2d 360 (6th Cir.1967); *Fidelity and Casualty Co. v. Lott,* 273 F.2d 500 (5th Cir.1960); *American Fire & Casualty Co. v. Allstate Insurance,* 214 F.2d 523 (4th Cir.1954). The term "arising out of the use" in liability policies has generally been held to be a broad, comprehensive term meaning "origination from," "having its origin in," "growing out," or "flowing from." *Insurance Company of North America v. Royal Indemnity Co.,* 429 F.2d 1014 (6th Cir.1970); *U.S. Fidelity and Guaranty Co. v. Western Fire Insurance Co.,* 450 S.W.2d 491 (Ky.1970); *Jamestown Mutual Insurance Co. v. General Acc. Fire and Life Assur. Corp.,* 66 Misc.2d 952, 322 N.Y.S.2d 806 (1971). The term "use", then, has been a general catch-all term construed by the courts to include all *proper uses* of a vehicle. *Appleman, Insurance Law and Practice,* § 4316 (1962). The broad construction is made possible by the inherent ambiguity of the term, and further, that ambiguity . calls for a strict construction against the party who drew the contract. (emphasis added)

*Id.* at 365.

The Court found that loading the vehicle was a proper use as defined by the liability policy.[2] The Court noted that loading a shotgun into the vehicle in conjunction with a hunting trip was making "use" of the vehicle within the policy definition of that term. The use being proper, it was reasonable and natural that they be exposed to some danger as a result of that use. Having determined that the accident occurred while the insured was engaged in a proper use of the vehicle, the Court next examined the causal connection between that use and Rapai's injuries. The Court further noted that the causal relationship need not be proximate, but that the use must be the efficient and predominating cause of the accident. *Id.* at 366. The Court had no difficulty in finding the requisite causal relationship between the insured's use of loading the vehicle and the victim's resulting injuries.

When faced with vehicle-related assaults, other states have restricted coverage to accidents occurring during the vehicle's "normal" use. *Wall v. Nationwide Mutual Insurance Co.,* 62 N.C.App. 127, 302 S.E.2d 302 (1983); *Kangas v. Aetna Casualty & Surety Co.,* 64 Mich.App. 1, 235 N.W.2d 42 (1975). In the first case, Wall scuffled with third party defendant Meacham outside a food store. After exiting the store, Meacham got into the car of his friend Adams. As Wall passed by Adams' vehicle on the way to his own car, Meacham took a gun from the dashboard of Adams' car and shot Wall. The North Carolina court found that the resulting injury was wholly disassociated from the normal use of the vehicle. 302 S.E.2d at 303. The use in *Wall,* discharging a weapon from inside of an automobile, was distinguished from the use of transporting guns, which the court had previously found to be a covered use of the vehicle. *See Reliance Insurance Co. v. Walker,* 33 N.C.App. 15, 234 S.E.2d 206, *cert. denied,* 293 N.C. 159, 236 S.E.2d 704 (1977).

---

**1.** Muehlman's father's business had a comprehensive commercial insurance policy which, by special endorsement, extended to family members in their use of automobiles.

**2.** The liability policy specified that ownership, maintenance or use included "loading and unloading" the automobile; however, the Court noted that these activities would fall "within the general catch-all term 'use'" even without such a provision. 491 S.W.2d at 365.

In *Kangas*, several passengers riding in the vehicle of the insured assaulted a pedestrian. In holding that the insurance company had no duty under its liability policy to defend the action against the insured for aiding and abetting in the assault and battery, the court found that "the injury must be foreseeably identifiable with the *normal* use, maintenance and ownership of the vehicle.... Assaults and fisticuffs are not *normal* foreseeable occurrences in the use of a vehicle." 235 N.W.2d at 50 (emphasis added).

In considering the facts of the case at bar, we find that the defendant Bennett's use of the vehicle to discharge his weapon in the direction of the group of children was not a proper or normal use of the vehicle as required by *Travelers, supra*. Because we find as a matter of law that the accident did not result from the proper use of Bennett's vehicle, we find it unnecessary to reach the question of whether there existed a causal relationship between Bennett's use of the vehicle and the injury to Laura Anderson.

The Andersons have directed us to cases which appear to reach the opposite result from our present holding. We note, however, that these cases were decided based upon the causal relationship or nexus between the use of the vehicle and the resulting injury. The courts declined to apply the *Travelers* analysis which requires this Court to determine whether the use of the vehicle was proper before addressing the causation issue. *See Government Employees Insurance Co. v. Novak*, 453 So.2d 1116, 1119 (Fla.1984) (type of conduct causing injury need not be foreseeably identifiable with vehicle's normal use); *General Accident Insurance Co. of America v. Olivier*, 574 A.2d 1240, 1242 (R.I.1990) (same); *Willard v. Kelley*, 803 P.2d 1124, 1131 (Okla.1990) (uninsured motorist coverage not limited to lawful uses).

The judgment of the trial court is affirmed. Costs of this appeal are taxed to the appellants, for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.