ESTATE OF Christopher SULLIVAN, Thomas Sullivan, Administrator, Thomas Sullivan, and Rhonda Sullivan, Appellants–Defendants,

v.

ALLSTATE INSURANCE COMPANY, Appellee–Plaintiff.

No. 49A04–0508–CV–495.

Court of Appeals of Indiana.

Feb. 10, 2006.

Joe Keith Lewis, Marion, for Appellants.

Patrick J. Dietrick, Jaime E. Lopez, Collignon & Dietrick, P.C., Indianapolis, for Appellee.

## OPINION

BAKER, Judge.

Appellants-defendants Estate of Christopher Sullivan, Thomas Sullivan, and Rhonda Sullivan (collectively, the Appellants) appeal from the trial court's order granting summary judgment in favor of appellee-plaintiff Allstate Insurance Company (Allstate). In particular, the Appellants argue that the trial court erred in defining the term "use" too narrowly in the context of an Allstate automobile insurance policy and in declining to find a genuine issue of material fact. Finding no error, we affirm the judgment of the trial court.

### FACTS

At the time of the events in question, Robert White and Alan McCormick, Robert's supervisor, were exclusive insurance agents for Primerica Insurance (Primerica). Primerica agents use their own vehicles to travel to the homes of prospective customers.

On March 8, 1999, Robert and Alan were returning from a sales call to the Whitaker family in Marion County. Alan was traveling as a front seat passenger in Robert's Ford Explorer, and Robert was driving. Robert allegedly caused the Explorer to travel into the path of an automobile being driven by Christopher Sullivan, causing Christopher's vehicle to cross the center line and collide with an oncoming semi-tractor trailer. Christopher died as a result of the collision.

At the time of the collision, Alan had an automobile insurance policy provided by Allstate. The policy provides that Alan is insured for damages caused by his use of a "non-owned auto," which means "an auto used by you . . . ." Appellants' App. p. 93A. The policy does not define the terms "used," "use," or "using."

At some point in time, the Appellants filed a lawsuit against Robert, Alan, and Primerica, seeking damages for the loss of Christopher's life. Allstate is defending Alan in that underlying action pursuant to a full reservation of rights. On October 6, 2004, Allstate filed a declaratory judgment action to determine whether it was required to insure and defend Alan from the Appellants' lawsuit. On March 29, 2005, Allstate filed a motion for summary judgment, arguing that the terms of Alan's insurance policy do not require Allstate to provide coverage and a defense in this case. Following a hearing, the trial court granted Allstate's motion on July 26, 2005. The Appellants now appeal.

### DISCUSSION AND DECISION

The Appellants argue that the trial court erred in granting summary judgment in favor of Allstate. Specifically, they contend that the trial court erred in defining "use" and in declining to find a genuine issue of material fact.

As we consider these arguments, we observe that summary judgment is appropriate only if the pleadings and evidence considered by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 909 (Ind.2001); *see also* Ind. Trial Rule 56(C). On a motion for sum-

mary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *Owens Corning,* 754 N.E.2d at 909. Additionally, all facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Id.* If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper. *Id.*

An appellate court faces the same issues that were before the trial court and follows the same process. *Id.* at 908. The party appealing from a summary judgment decision has the burden of persuading the court that the grant or denial of summary judgment was erroneous. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.*

### I.  Definition of "Use"

■  The Appellants first argue that the trial court erred in defining the term "use" in the context of Alan's insurance policy. In particular, they contend that the trial court's definition is too restrictive.

■  Initially, we note that the failure to define a term within an insurance policy does not necessarily render that term ambiguous. *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 667 (Ind.1997). Additionally, the fact that the parties disagree about the interpretation of the policy does not establish an ambiguity. *Vann v. United Farm Family Mut. Ins. Co.,* 790 N.E.2d 497, 502 (Ind.Ct.App.2003), *trans. denied.* Where language in a policy is clear and unambiguous, it should be given its plain and ordinary meaning. *Id.* The interpretation of an insurance policy is primarily a question of law for the court, and it is, accordingly, a question that is particularly well suited for summary judgment.

*Transcon. Tech. Servs., Inc. v. Allen,* 642 N.E.2d 981, 983 (Ind.Ct.App.1994), *trans. denied.*

Although the trial court did not adopt a specific definition of "use" in the context of Alan's policy, it delineated the ways in which Indiana courts have defined the term in the past. In *Protective Ins. Co. v. Coca–Cola Bottling Co.–Indianapolis–Inc.,* 467 N.E.2d 786, 790 (Ind.Ct.App.1984), *trans. denied,* the court considered whether a bottling company "used" a vehicle by directing its location during unloading. Ultimately, the court concluded that "[t]he better reasoned cases interpreting 'use' as that word appears ... in a truckman's liability policy deny coverage unless the potential insured exercises direct control over the vehicle." *Id.* at 788–89. According to the *Protective Insurance* court, the term "use" in a liability policy suggests "activity that assists in propelling or directing the vehicle to a place where it ceases to be employed ..." *Id.* at 790–91. Thus, the court refused to extend coverage to the bottling company because it had not been "using" the vehicle.

In *Miller v. Loman,* 518 N.E.2d 486 (Ind.Ct.App.1987), the court considered whether a passenger was "using" a vehicle when he kicked the vehicle's muffler from the roadside. In holding that the passenger was not "using" the vehicle at the time of the accident, the court held that

> [u]nder Indiana law, "use" of a vehicle means [an activity] "that assists in propelling or directing a vehicle to a place where it ceases to be employed." *Even while he was still in the truck, Miller did not engage in this kind of activity.* He certainly did not engage in such activity when he was thirty feet from the truck.

*Id.* at 492 (quoting *Protective Ins.,* 467 N.E.2d at 790) (emphasis added).

This court next addressed the definition of "use" in *American Family Mutual Insurance Co. v. National Insurance Ass'n*, 577 N.E.2d 969 (Ind.Ct.App.1991). In that case, the court noted that the word "use" in similar insurance policy clauses had been consistently considered synonymous with "drive" or "operate": "in every case in other jurisdictions the courts have always employed the word 'use' as being synonymous with 'drive' or 'operate,' " recognizing this definition as "the universally accepted meaning of the word 'use' in the context of automobile policy language interpretation." *Id.*

The Appellants suggest that the way in which Indiana courts define "use" depends on the relationship of the person claiming coverage to the parties to the contract. They argue that because Alan was Allstate's insured and a party to the insurance contract, we should define "use" more liberally in this context. They point to two cases as support for this argument. First, they suggest that *Challis v. Commercial Standard Ins. Co.*, 117 Ind.App. 180, 69 N.E.2d 178 (Ind.Ct.App.1946), *trans. denied*, supports their position. In *Challis*, the court considered an automobile insurance policy that was issued to an individual who operated parking lots. An accident occurred while an employee was driving a vehicle from one lot to another, and the trial court adopted the broader definition of the word "use" to allow coverage for the insured: "to put to one's own service." *Id.* at 182, 69 N.E.2d at 179. Initially, we point out that *Challis* was decided in 1946, and the Indiana courts have had several opportunities to interpret "use" since that time, each time using a more restrictive definition of the term. Moreover, we note that the *Protective Insurance* court distinguished *Challis* based on its unique factual situation:

> [in *Challis*,] this court construed the word "use" in a parking lot owner's liability policy to mean putting to one's own service. This case, however, arose from a dissimilar fact situation, distinguishing it from the case at hand. Challis's insurance policy excluded coverage for accidents arising out of the use of motor vehicles. Construing the insurance policy in favor of the named insured to prevent the defeat of indemnification, this court found driving an automobile did not constitute use and, hence, the insured was covered.

*Protective Insurance*, 467 N.E.2d at 789 n. 5. We agree, and conclude that *Challis* is sufficiently outdated and factually distinguishable from the case at hand that it does not persuade us to adopt a more liberal definition of "use."

The Appellants next turn to *Monroe Guar. Ins. Co. v. Campos*, 582 N.E.2d 865 (Ind.Ct.App.1991), *trans. denied*, as support for their position. In *Monroe*, a tow truck operator—Campos—was driving a tow truck in the course of his employment. Campos arrived at the location where a vehicle needed to be towed, and a police officer was on the scene. The officer instructed Campos to wait in the police car while a Breathalyzer test was conducted on the driver of the vehicle to be towed. After the test was completed, Campos exited the police vehicle and was struck and severely injured by a passing uninsured motorist. The insurer claimed that Campos was not "using" the insured tow truck at the time of the accident within the terms of the policy. The *Monroe* court disagreed, concluding that even though Campos was not in the insured vehicle at the time of the accident, he had a more "active" relationship to the insured vehicle than someone who is a mere passenger, as in *Miller*. The court elaborated on the nature of the insurance policy at issue:

The contract between Monroe and Allen Towing provides insurance coverage to Allen Towing and its employees who are engaged in the business of towing disabled vehicles. The parties certainly would have contemplated the nature of this business activity. Removal of disabled vehicles from roadways cannot be accomplished solely by the activity of "propelling or directing" the towing vehicle. Reasonable persons would expect that a tow truck operator must engage in other activities during the towing process, some of which will require that he exit the vehicle (e.g. evaluation of the towing scene, securing the vehicle to be towed, attachment of towing equipment to the disabled vehicle, conferring with appropriate officials concerning safety procedures).

*Id.* at 870. Thus, the court concluded that Campos was "using" the tow truck at the time of the accident and, accordingly, held that the insurer was required to provide coverage.

It is apparent to us that *Monroe* is distinguishable from the case before us and that it is far more helpful to Allstate than to the Appellants. *Monroe* focuses on the relationship between the insured and the insured vehicle. Here, Alan had a direct relationship to the insured vehicle, but unfortunately for the Appellants, that vehicle was not the one that was involved in the accident. To the contrary, the vehicle in the accident belonged to, and was driven by, Robert. Alan's only relationship to that vehicle was the fact that he was a passenger in it. And, as noted above, Indiana courts—including *Monroe*—have determined that merely being a passenger in a vehicle does not constitute "using" it in this context. Thus, we conclude that the trial court properly defined "use" in accordance with this court's past pronouncements: to drive, operate, or direct the vehicle.

## II. Genuine Issue of Material Fact

■ The Appellants next argue that even if we apply the trial court's definition of "use," summary judgment was improper because there was a genuine issue of material fact. Specifically, they argue that there is a genuine issue of material fact with respect to whether Alan provided directions to Robert as they tried to locate the Whitakers' residence.

■ A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Poznanski ex rel. Poznanski v. Horvath*, 788 N.E.2d 1255, 1258 (Ind.2003). To be considered genuine for the purpose of summary judgment, an issue of material fact must be established by sufficient evidence in support of the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial. *Street v. Shoe Carnival, Inc.*, 660 N.E.2d 1054, 1056–57 (Ind.Ct.App.1996). An inference is not reasonable when it rests on no more than speculation or conjecture. *Miller v. Monsanto Co.*, 626 N.E.2d 538, 541 (Ind.Ct.App.1993).

The Appellants argue that we may draw an inference from the evidence that Alan directed Robert in the operation of the vehicle—hence, "using" it—by providing directions to the Whitakers' residence. They acknowledge that both Robert and Alan denied that Alan gave Robert directions, but point to evidence suggesting that Robert was unfamiliar with the area, that Robert did not know how to get to the Whitakers' residence, and that Alan "knew his way around town," Appellants' Br. p. 16, and could have provided directions. They also suggest that the record does not

establish how Robert arrived at the Whitakers' residence, given that he was unfamiliar with the area but did not receive directions from Alan. The Appellants argue that this evidence creates an inference that there is a genuine issue of material fact.

The trial court disagreed, noting that it was "well aware of Defendant Sullivan's 'inference' that McCormick must have provided directions to White. However, the designated evidence does not support such an inference." ' Appellants' App. p. 298. We agree. The only evidence at issue— Robert's and Alan's depositions—establishes that both men deny that Alan provided Robert with directions. Moreover, we note that the Appellants neglected to share the following testimony from Robert:

Q: How did you get directions to the Whitaker's?

A: I called the Whitakers.

\* \* \* \* \* \*

Q: You called them. They provided you directions?

A: Yes.

Appellants' App. p. 246–47. We find it troubling that the Appellants neglected to bring this testimony to our attention because their brief implies that the record does not explain how Robert arrived at the Whitakers' residence, arguably creating an inference that Alan provided him with directions. In any event, it is apparent that the record does not contain any evidence supporting such an inference. The evidence is undisputed that Alan did not provide directions to Robert, and as aptly put by Allstate, "[a]n inference does not arise simply because Appellants disagree with the undisputed evidence." Appellee's Br. p. 17. The trial court properly concluded that there were no genuine issues of material fact.

The judgment of the trial court is affirmed.

NAJAM, J., and BAILEY, J., concur.